**HALLCO TEXAS, INC., Petitioner,**

v.

**McMULLEN COUNTY, Respondent.**

No. 02–1176.

Supreme Court of Texas.

Argued Jan. 4, 2005.

Delivered Dec. 29, 2006.

Rehearing Denied June 1, 2007.

Lynn E. Blais, University of Texas School of Law, R. James George Jr., George & Brothers, L.L.P. and Max Renea Hicks, Law Office of Max Renea Hicks, Austin, TX, for Petitioner.

Portia Bosse and James P. Allison, Allison Bass & Associates, L.L.P., Austin, for Respondent.

Justice O'NEILL delivered the opinion of the Court as to Parts I, II, III.B, and V, joined by Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice BRISTER, and Justice JOHNSON, and an opinion as to Part III.A and IV, joined by Chief Justice JEFFERSON, Justice BRISTER, and Justice JOHNSON.

Hallco Texas, Inc. contends McMullen County's denial of a variance from an ordinance prohibiting the location of landfills within three miles of a water-supply reservoir effected an unconstitutional taking of property. We hold that Hallco's claim is barred and thus affirm the court of appeals' judgment.

## I. Background

In January 1991, Hallco bought 128 acres of land located about 1.75 miles from Choke Canyon Reservoir, sometimes referred to as Choke Canyon Lake, in McMullen County. The reservoir impounds water from the Frio River and supplies water to the City of Corpus Christi and a number of other communities in the region. Hallco purchased the property with the intent to operate a Class I nonhazardous industrial waste landfill, a use requiring a permit from the Texas Commission on Environmental Quality[1]. Class I industrial waste may include waste that, because of its concentration or physical or chemical characteristics, "is toxic, corrosive, flammable, a strong sensitizer or irritant, or a generator of sudden pressure by decomposition, heat, or other means," and which may pose a potential danger to human health or the environment. TEX. HEALTH & SAFETY CODE § 361.003(2)(A), (B); 30 TEX. ADMIN. CODE § 335.1(18)(18). Class I nonhazardous is distinct from Class I hazardous waste, but "is considered potentially threatening to human health and the environment if not properly managed, because of the constituents and properties this class can include," and thus requires special handling. TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, GUIDELINES FOR THE CLASSIFICATION AND CODING OF INDUSTRIAL AND HAZARDOUS WASTES 2 (2005), *available*

---

1. At the time, the agency was known as the Texas Natural Resource Conservation Commission. In 2002, the agency's name was changed to the Texas Commission on Environmental Quality, *see* 27 Tex. Reg. 8340 (2002), to which we will refer in this opinion.

*at* http://www.tceq.state.tx.us/comm_exec/forms_pubs/pubs/rg–022_476238.pdf. In the course of Hallco's purchase, the company's president discussed Hallco's plans for the property with the McMullen County Judge, who voiced opposition. Eleven days after Hallco purchased the property, the McMullen County Commissioners Court adopted a resolution expressing opposition to the proposed use as a potential hazard to local water supplies. Despite the County's disagreement, Hallco proceeded with plans to develop the property as an industrial-waste landfill, and on July 27, 1992, formally filed its application with the Texas Commission on Environmental Quality.

In June 1993, the County enacted the ordinance at issue here pursuant to section 364.012 of the Health and Safety Code. While Texas counties generally enjoy fairly limited zoning authority, that provision allows a county to prohibit municipal or industrial solid-waste disposal that presents a threat to the public health, safety, and welfare, so long as the county designates an area in which disposal is permissible. TEX. HEALTH & SAFETY CODE § 364.012(a), (b).[2] McMullen County's ordinance prohibits the disposal of solid waste within three miles of Choke Canyon Lake, but allows disposal in any other area of the county so long as applicable state requirements are met. MCMULLEN COUNTY ORD. No. 01–06–93. Although the County had conducted no technical studies at the time the ordinance was passed, the ordinance's predicatory provisions state that "a safe and abundant supply of drinking water is necessary to preserve and protect the health and welfare of the citizens of McMullen County;" that "soil in the area of the lake is porous and subsurface materials tend to be unstable and volatile;" that "the disposal of solid waste within three (3) miles of Choke Canyon Lake would constitute a threat to the public health, safety, and welfare;" and that "the present technology available with regard to the installation, operation and maintenance of solid waste disposal sites is insufficient to prevent contamination of adjacent areas." *Id.* Neither the Health and Safety Code nor the ordinance establish any procedure to obtain a variance from the landfill prohibition.

By the time the County passed the ordinance, Hallco claims it had invested more than $800,000 in the site and the Commission permitting process. The Commission issued a "final draft permit" in January 1995, and a "revised final draft permit" a little over a month later. A final draft permit reflects permit conditions recommended by the Commission's staff after completion of its technical review, but the permit's issuance may still depend on the outcome of a contested-case hearing. *See* 30 TEX. ADMIN. CODE § 80.118(a)(1). The County, the City of Corpus Christi, the Nueces River Authority, and several others appeared in the Commission proceedings and raised objections to Hallco's application. Hallco's application apparently remains pending at the Commission.[3]

In June 1995, Hallco challenged the County's ordinance by filing suit in the

---

2. In 1999, the statute was amended to prohibit counties from adopting an ordinance for which a permit application was pending. TEX. HEALTH & SAFETY CODE § 364.012(e).

3. In 2003, the Legislature enacted legislation requiring the Commission to adopt rules governing all aspects of the management and operation of new commercial nonhazardous industrial solid waste landfills, and directed the Commission to suspend processing pending applications until it adopted such rules. Act of May 27, 2003, 78th Leg., R.S., ch. 1117, §§ 2–3, 2003 Tex. Gen. Laws 3207, 3208. The Commission adopted rules in March 2004.

federal district court; it also filed a parallel proceeding in state court. The federal court dismissed Hallco's substantive due-process and equal-protection claims with prejudice, holding that the ordinance was rationally related to a legitimate governmental purpose. 934 F.Supp. 238, 241–42 (S.D.Tex.1996). In doing so, the court described an "Issues List," prepared by the Office of Public Interest Counsel and attached as an exhibit to the County's briefing, as "aptly illustrat[ing] that the safety of this proposed project is at least 'fairly debatable.'" *Id.* at 241. The court dismissed without prejudice Hallco's claim alleging an unconstitutional taking in violation of the Fifth Amendment to the United States Constitution, holding that to ripen its federal takings claim Hallco first had to seek compensation through procedures the state had established. *Id.* at 240. The court rested that decision upon *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), which requires a party alleging a Fifth Amendment taking to obtain a final decision regarding application of the challenged regulation to its property, and to first use any available state procedure to obtain just compensation. The court noted that it was "arguable whether Hallco meets the first condition," bypassing Hallco's argument that the ordinance "constitutes a final decision because it ... does not expressly provide any means for obtaining variances from the provisions."[4] *Id.* at 240. Instead, the court held that Hallco's Fifth

Amendment claim was premature because Hallco had not sought compensation under article I, section 17 of the Texas Constitution. *Id.*

A week after the federal court's dismissal, the County moved for summary judgment in the state court action. With respect to Hallco's takings claims, the County argued that Hallco had no claim for compensation under either the state or federal constitution because Hallco had no cognizable property interest in disposing of waste on its property. The County argued, alternatively, that the ordinance was a reasonable exercise of police power that did not deprive Hallco of all economic use of its property. The County also moved for summary judgment on Hallco's equal-protection, due-process, contracts-clause, and state statutory causes of action. The trial court granted the County's motion as to all claims without specifying the grounds. *Hallco Texas, Inc. v. McMullen County,* 1997 WL 184719, *6 (April 16, 1997) (not designated for publication) (*"Hallco I "*).

The court of appeals affirmed the trial court's judgment, holding that "Hallco's takings claim must fail because [Hallco] did not have a cognizable property interest of which the government could deprive [it]." *Id.* at *2, 3. The court reasoned that "the Legislature has defined when property owners may dispose of solid waste on their property via the permitting process" under sections 361.061–361.345 of the Tex-

---

**4.** The County responded to Hallco's final-decision argument that,

> [e]ven if there were a futility exception, at least one application for variance would be required to establish futility. Contrary to Plaintiff's assertion, the fact that the ordinance does not contain a provision for reviewing how the ordinance will be applied to particular property does not establish that it is futile; the Commissioners Court

> has the authority to grant a variance, or even to rescind the ordinance, if Hallco presents sufficient justification.

Case No. 95–L–22, United States District Court for the Southern District of Texas, Laredo Division, *Defendants' Replies to Both Plaintiff's [sic] Motion to Stay Based on Abstention Principles and Plaintiff's Amended Response to Defendant's Motion to Dismiss with Brief in Support.*

as Health and Safety Code, and stated that,

> [e]ven if Hallco already had a permit, by definition, it would not have a property interest in disposal of solid waste. [Commission] regulations define permits as not being a property interest or a vested right.... The only way the McMullen County regulation affected Hallco was in denying it the right to operate a solid waste facility on the proposed site. A mere expectancy of future services which would render the land more valuable, in the absence of a contract, is not a vested property right for purposes of determining whether a taking has occurred.

*Id.* at *3 (citations omitted). The court of appeals' judgment issued April 16, 1997, and Hallco did not appeal that decision.

More than two years after the court of appeals' judgment and nearly six years after the ordinance was enacted, Hallco submitted a request for a variance to the McMullen County Commissioners Court. Hallco offered no changes to its proposed landfill. Instead, Hallco's request claimed the ordinance had no scientific basis and alleged the County had singled out Hallco and its property for disparate and unfair treatment. Attached to the request was an appraiser's assessment of the ordinance's economic impact on Hallco. Hallco asked the County to issue a variance permitting it to operate the proposed facility "notwithstanding the provisions of the County's Ordinance." The County permitted Hallco to make a presentation on the request to the Commissioners Court, but took no action on Hallco's request.

Two months later, Hallco filed the lawsuit underlying this appeal. Hallco expressly disavowed any challenge to the ordinance's validity. Instead, Hallco alleged that by denying its variance request the County had taken, damaged, or destroyed Hallco's property for public use in violation of article I, section 17 of the Texas Constitution. Hallco also alleged that the County had taken its property without just compensation in violation of the Fifth Amendment to the United States Constitution. Hallco purported to reserve the federal takings claim for prosecution in the federal courts, citing *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Jennings v. Caddo Parish School Board,* 531 F.2d 1331 (5th Cir.1976); *Fields v. Sarasota Manatee Airport Authority,* 953 F.2d 1299 (11th Cir.1992); and *Guetersloh v. State,* 930 S.W.2d 284 (Tex. App.-Austin 1996, writ denied). Hallco later amended its petition to assert a claim under the Texas Private Real Property Rights Preservation Act, which allows property owners to sue for certain governmental actions that result in an unconstitutional taking or restrict the use of property so as to reduce its value by at least twenty-five percent. TEX. GOV'T CODE § 2007.021. Hallco alleged that, as a result of the County's action, it had sustained property-loss damages of $5,141,700, business-loss damages of $15,811,700, and permit-expense damages of $821,706.

In August 2001, the County moved for summary judgment on all of Hallco's claims. The County again argued that Hallco had no constitutionally protected property right to use its land for solid-waste disposal, and that even if it did, the County reasonably exercised its police power. The County also asserted that Hallco's claims were all barred by res judicata because they were or could have been raised in the first state lawsuit. Finally, the County argued that the statute of limitations and laches barred Hallco's claims. The trial court again granted the County's motion without specifying the grounds, and the court of appeals affirmed. *Hallco Tex-*

*as, Inc. v. McMullen County,* 94 S.W.3d 735 (Tex.App.-San Antonio 2002) ("*Hallco II*"). The court of appeals reaffirmed its prior holding that Hallco had no constitutionally protected property interest in the disposal of solid waste on its property, thus defeating Hallco's takings claim whether it was framed as a facial or an as-applied challenge. *Id.* at 738–739. The court also held that, regardless of whether Hallco's federal takings claim was ripe when *Hallco I* was decided, "the issue of whether a taking had occurred under either federal or state law was ripe," and Hallco had failed to reserve its right to return to federal court in the prior lawsuit. *Id.* at 739. We granted Hallco's petition for review.

## II. Parties' Arguments

### A. Takings Overview

 Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation being made...." TEX. CONST., art. I, § 17. Absent a cognizable property interest, a claimant is not entitled to compensation under article I, section 17. *Tarrant County v. Ashmore,* 635 S.W.2d 417, 422 (Tex.1982). Although our takings provision is worded differently than the Takings Clause of the Fifth Amendment to the United States Constitution, we have described it as "comparable" and the parties here agree that it is appropriate to look to federal cases for guidance. *Sheffield Devel. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 669 (Tex.2004). Both provisions recognize that, while " 'all property is held subject to the valid exercise of the police power,' " a regulation may, under some circumstances, constitute a taking requiring compensation. *Id.* at 670 (quoting *City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 804

(Tex.1984)). "Physical possession is, categorically, a taking for which compensation is constitutionally mandated...." *Id.* at 669–70 (citing *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002)). Regulatory action short of physical confiscation or invasion may also result in a taking. *Id.* A regulation that deprives a property owner of all economically beneficial or productive use of the property "makes the regulation categorically a taking." *Id.* at 671. Lesser interferences, however, may also result in a taking. These types of regulatory actions require an "essentially ad hoc, factual inquir[y]...." *Id.* at 672 (quoting *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).

 A regulation may go so far in imposing public burdens on private interests as to require compensation. *Id.* at 672. In deciding whether regulatory action goes "too far," we carefully weigh "all the relevant circumstances," including:

> (1) " 'the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action.' "

*Id.* at 670–72 (quoting *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 225, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (quoting *Penn Central,* 438 U.S. at 124, 98 S.Ct. 2646)). The extent of the governmental intrusion may be a question for the trier of fact, but whether the facts constitute a taking is a question of law. *Id.* at 673 (citing *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 932–33 (Tex.1998)).

### B. The Parties' Contentions

Hallco contends the court of appeals misanalyzed its takings claim by holding that,

as a matter of law, Hallco could not lodge a regulatory takings challenge against the County ordinance solely because it had not yet obtained an industrial waste-disposal permit. According to Hallco, a landowner *always* has a reasonable investment-backed expectation in pursuing a development project that was lawful when the land was purchased and need not demonstrate that it has secured all necessary permits in order to pursue a takings challenge. Moreover, Hallco complains, the court of appeals improperly elevated one relevant factor—the landowner's investment-backed expectations—to a dispositive threshold inquiry, contrary to *Mayhew* and *Penn Central*. This analysis, Hallco maintains, transformed a nuanced, fact-specific inquiry into the type of formulaic approach the Supreme Court has repeatedly cautioned against. Hallco points out that the landowners in *Penn Central*, *Sheffield*, and *Mayhew* all lacked permits necessary for development, and claims the court of appeals' approach would preclude almost every conceivable takings challenge. Hallco acknowledges this Court's statement in *Mayhew* that "[t]he existing and *permitted* uses of the property constitute the 'primary expectation' of the landowner that is affected by regulation." *Mayhew*, 964 S.W.2d at 936 (emphasis added). But according to Hallco, the Court "obviously meant that courts should look to existing land use restrictions applicable to the property when determining whether a regulation interferes with reasonable investment backed expectations."

Hallco also contends the court of appeals erred in affirming summary judgment on its as-applied Fifth Amendment takings claim. Hallco claims it followed the appropriate procedure to secure federal review of that claim by expressly reserving it in its petition, *Guetersloh*, 930 S.W.2d at 289–90, and the court of appeals incorrectly reasoned that the reservation was ineffec-

tive because Hallco did not reserve its federal claim in *Hallco I*. According to Hallco, it is litigating its as-applied challenge for the first time. Hallco claims the as-applied challenge was not ripe when *Hallco I* was litigated because no particularized application of the ordinance to Hallco's property had been made. Hallco contends the County's position now, that res judicata bars its claim, is entirely inconsistent with its position in the prior federal suit that the County's claim was not ripe under *Williamson County's* final-decision requirement. Because the trial court would not have had subject-matter jurisdiction over the claim, Hallco argues, it cannot be barred by res judicata, and for similar reasons the County's affirmative defenses of collateral estoppel, laches, and limitations must fail. Finally, Hallco contends the court of appeals erred in affirming summary judgment because by denying Hallco a variance from the ordinance, the County imposed a substantial public burden on Hallco which, in all fairness and justice, should be borne by the public as a whole. Hallco contends that it "was singled out by the Commissioners' Court to bear the entire cost of the county's choice to remain free of landfills...." Hallco claims that it presented unrefuted summary-judgment proof that the ordinance decreased the value of its property by ninety-nine percent and it had a distinct investment-backed expectation that it would be able to use its property to operate a solid-waste-disposal facility when it received its permit from the Commission.

The County responds that it acted well within its police power by passing and enforcing the ordinance to protect the County's main source of drinking water. According to the County, it was entitled to explore its options to protect its citizens by first participating in the Commission per-

mitting process before enacting the ordinance, and its ordinance is presumptively valid. Moreover, the County asserts, Hallco had no property interest in disposing of solid waste on its property because it never had a right to such a use; state law prohibits the disposal of solid waste without a permit, and Hallco cannot assert an investment-backed expectation on the speculative premise that it *might* obtain a permit. If that were the case, the County argues, then every property owner within three miles of Choke Canyon Reservoir would have a similar takings claim. But even if Hallco had a cognizable property interest, the County claims, the ordinance was not an unreasonable interference. Government is not required to ensure that a landowner can make the most profitable use of its property, and the County presented summary-judgment proof that other reasonably profitable uses of the property are available to Hallco. In any event, the County argues, res judicata bars all of Hallco's claims because the elements of Hallco's "facial" and "as-applied" claims are the same and were fully adjudicated in *Hallco I*. The ordinance created a prohibition, not a regulation, the County argues, and Hallco's submission of a variance changed nothing. The County maintains that under Hallco's theory, Hallco could revive an already adjudicated claim any number of times simply by submitting additional variance requests.

## III. Analysis

### A. Res judicata

 We begin by considering the County's res-judicata argument because, if meritorious, it is dispositive of this appeal. The doctrine of res judicata, or claim preclusion, bars a second action by parties and their privies on matters actually litigated in a previous suit, as well as claims " 'which, through the exercise of diligence,

could have been litigated in a prior suit.' " *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex.1992) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex.1992)). We apply the transactional approach to res judicata, which requires claims arising out of the same subject matter to be litigated in a single lawsuit. *Barr*, 837 S.W.2d at 631. The *res-judicata* doctrine "serves vital public interests" by promoting the finality of judgments. *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 345, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005). We have recognized that the doctrine prevents needless, repetitive litigation, *John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288–89 (Tex.2002) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)), and in doing so, "advance[s] the interest[s] of the litigants (who must pay for each suit), the courts (who must try each suit), and the public (who must provide jurors and administration for each suit)." *Schneider Nat'l Carriers, Inc., v. Bates*, 147 S.W.3d 264, 278 (Tex.2004).

Hallco contends res judicata does not apply because Hallco's claim in the previous suit was a facial constitutional challenge to the ordinance while this suit challenges the County's particular application of the ordinance to its property, and its as-applied takings claim was not ripe in *Hallco I* because it had not sought a variance from the ordinance. However, neither of these arguments circumvents res judicata's application in this case.

 Hallco argues that its as-applied and facial takings claims are distinct and therefore the adjudication of one cannot bar assertion of the other. Whether or not a cognizable distinction may be drawn between Hallco's takings claims, of course, does not answer the question of whether res judicata bars its as-applied

challenge here. Certainly a contract claim is distinct from one based in tort, but if the claims arise out of the same subject matter and can be brought together they cannot be asserted separately. *See Getty*, 845 S.W.2d at 798. Hallco contends its as-applied takings claim was not ripe in *Hallco I* because it had not sought a variance, and the federal court dismissed its claim for that reason. Hallco mischaracterizes the federal court's decision, however. While the federal court noted that it was "arguable" whether Hallco's suit was ripe under *Williamson County's* final-decision requirement, it plainly based its ruling on the ground that an inverse condemnation suit had not been concluded in state court. *Hallco Texas, Inc.*, 934 F.Supp. at 240 (citing *Williamson County*, 473 U.S. 172, 105 S.Ct. 3108 (1985)). But that the as-applied challenge was not ripe for federal adjudication under *Williamson County* does not mean that it wasn't ripe for adjudication in the then-pending state action. The ripeness of the state claim cannot be measured by the ripeness of Hallco's federal claim since a federal claim is not ripe until state court proceedings have been concluded; if federal and state claims ripen at the same time, then neither could ever get started.

In determining whether Hallco's present as-applied challenge was ripe for adjudication in the prior litigation, it is helpful to examine the underpinnings of the ripeness requirement in takings litigation. In an as-applied challenge, requiring a claimant to pursue a variance or otherwise test the regulation's application in order to ripen the claim allows the factfinder to measure the extent of the regulation's economic im-pact so that the takings claim may be adequately assessed. In *Williamson County*, for example, the planning commission disapproved a developer's proposed plat for eight specific reasons, including density and grade problems, the length of two cul-de-sacs, the grade of certain roads, lack of fire protection, main-access road disrepair, and problems with minimum frontage. *Williamson County*, 473 U.S. at 181, 105 S.Ct. 3108. The developer filed a takings suit claiming that it could only build 67 units if it designed the development to meet the commission's objections, which was 409 fewer than the developer claimed it was entitled to build. *Id.* at 182, 105 S.Ct. 3108. The planning commission's expert, though, testified that a 300–unit development could be designed that would overcome the commission's objections. *Id.* The Supreme Court concluded that the developer's takings claim was not ripe because, without further inquiry and the developer's pursuit of potential variances from the commission's specific objections, it was not possible to determine how the regulations would ultimately be applied, making it impossible to discern what the economic impact of the challenged action would be or the extent to which it would interfere with the developer's reasonable investment-backed expectations—two key inquiries in a regulatory-takings claim. *Id.* at 190–91, 105 S.Ct. 3108.[5] Thus, assessment of the regulations' economic impact depended upon determining the optimum use that the commission would ultimately allow after considering the developer's proposals to meet the commission's concerns.

---

**5.** The Court noted that the developer's expert witness who testified about the regulations' economic impact did not itemize the effect of each of the commission's eight objections, and thus concluded the jury was "unable to discern how a grant of a variance from any one of the regulations at issue would have affected the profitability of the development" or "whether [the developer] 'will be unable to derive economic benefit' from the land." *Id.* at 191, 105 S.Ct. 3108.

Unlike *Williamson County*, this is not a case in which a general zoning or land-use restriction was subject to discretionary application or variance. In such cases, the impact on a particular property may not be ripe until a variance is finally denied. *See, e.g., Williamson County*, 473 U.S. at 186, 105 S.Ct. 3108; *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex.1998). But this was no zoning ordinance; the ordinance here prohibited precisely the use Hallco intended to make of this property, and nothing in the ordinance suggested any exceptions would be made. Hallco's taking claim was ripe upon enactment because at that moment the "permissible uses of the property [were] known to a reasonable degree of certainty." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). The factors necessary to assess the ordinance's economic impact and the reasonableness of Hallco's investment-backed expectations were fixed in the prior litigation, and Hallco has made no claim that those elements were impacted any differently by its variance request. The facts relevant to Hallco's present takings claim—the County ordinance's wholesale prohibition, the manner in which it would be applied, and the nature of the damage suffered—were all evident in the prior suit, and Hallco's requested variance proposed no new or different application. Although styled a "variance request," Hallco's request was nothing more than a demand for the County to reconsider what had been its position all along. Under these circumstances, Hallco's facial and as-applied challenges were the same regardless of how Hallco chose to frame its pleadings, and res judicata bars another bite at the apple.

### B. Unappealed prior judgment

Moreover, the legal ground upon which the court of appeals resolved Hallco's prior takings claim would preclude both an as-applied and a facial takings challenge, yet Hallco chose not to appeal the *Hallco I* decision. Specifically, in *Hallco I* the court held that Hallco did not have a protected property interest in the disposal of solid waste and therefore there could be no taking as a matter of law. 1997 WL 184719 at *3. Whether or not the court of appeals was correct in deciding that Hallco had no compensable interest, that holding is dispositive and not subject to collateral attack; claim preclusion inheres regardless of whether the prior decision was correct. *Purcell v. Bellinger*, 940 S.W.2d 599, 602 (Tex.1997). If Hallco wished to challenge the court of appeals' decision, it could have filed an appeal, which it chose not to do.

We have emphasized the strong policies discouraging *seriatim* litigation on several recent occasions. For example, we have rejected the notion that parties may elect whether to assert a temporary or permanent nuisance, noting that "claimants cannot opt for an indefinite limitations period or a series of suits whenever they would prefer." *Schneider*, 147 S.W.3d at 281–82; *Pustejovsky v. Rapid–Am. Corp.*, 35 S.W.3d 643, 647 (Tex.2000) (noting that single-action rule is a species of res judicata designed to "prevent[ ] vexatious and oppressive litigation"). In *Pustejovsky*, we declined to apply the single-action rule to a mesothelioma claimant who had earlier brought an action for asbestosis. 35 S.W.3d at 652. We noted that, while both asbestosis and mesothelioma result from asbestos exposure, they are distinct conditions. *Id.* We reasoned that the "transactional approach set out in *Barr* does not necessarily penalize a plaintiff for not bringing a claim arising out of the same facts that nonetheless could not have been litigated in the initial action." *Id.* at 651.

Pustejovsky's mesothelioma claim was not barred because, as a practical matter, he could not have proven that he would get the disease to a reasonable medical probability in the previous action. *Id.* at 652. In contrast, the takings claim asserted in *Hallco I* sought compensation for the same injury asserted here, and the elements of both an as-applied and facial challenge were fixed and known in the prior litigation.

We are sympathetic to Hallco's contention that the County improperly singled it out to bear a public burden by acting to defeat its permit application through regulation rather than the permit process. McMullen County unquestionably had the power to regulate land use, especially around a water supply like Choke Canyon Reservoir, and in the abstract, its doing so would hardly ever give rise to takings liability. But even if a governmental entity may effect a taking by advancing an illegitimate purpose, as Hallco claims,[6] there was nothing to prevent Hallco from asserting in the prior litigation that the County targeted its property unlawfully, and the final judgment in *Hallco I* bars that claim here.

▇▇ For similar reasons, the *Hallco I* final judgment bars Hallco's claim under the Private Real Property Rights Preservation Act. TEX. GOV'T CODE § 2007.001–.045. The Act allows private real-property owners to sue political subdivisions for certain governmental actions that require compensation under the Fifth or Fourteenth Amendments to the United States Constitution or article I, sections 17 or 19 of the Texas Constitution. TEX. GOV'T CODE § 2007.021. Those actions include the adoption or enforcement "of an ordi-

nance, rule, regulatory requirement, resolution, policy, guideline, or similar measure." *Id.* at §§ 2007.003(a)(1), (4). The Act applies only to ordinances proposed on or after September 1, 1995, or to enforcement actions initiated on or after the same date. Private Real Property Rights Preservation Act, 74th Leg., R.S. ch. 517, § 6, 1995 Tex. Gen. Laws 3266, 3272. Because the County's ordinance was enacted before the Act's effective date, the statute can only apply if, as Hallco argues, the rejection of its variance request on September 13, 1999, constituted an enforcement action. But even if rejecting a variance comes within the statute's enforcement-action purview as Hallco claims, Hallco failed to assert its variance request in the prior litigation and cannot resurrect the Act's protections here.

## IV. Fifth Amendment Taking Claim

▇▇ Finally, Hallco claims it properly reserved its as-applied Fifth Amendment takings claim, which it may now assert. We disagree. As the United States Supreme Court has recently made clear, the final judgment in *Hallco I* also bars Hallco's Fifth Amendment takings claim. *See San Remo Hotel, L.P.,* 545 U.S. 323, 125 S.Ct. 2491. In *San Remo Hotel,* owners of a hotel asserted a federal takings claim against the City and County of San Francisco after the California courts ruled against them on their state constitutional takings claim. The Supreme Court held that the full-faith-and-credit statute, 28 U.S.C. § 1738, required the federal court to give preclusive effect to the California judgment. *Id.* at 347–48, 125 S.Ct. 2491. Section 1738 requires the federal courts to give "the same full faith and credit [to

---

**6.** We note that the United States Supreme Court recently held that whether a governmental action substantially advances a legitimate state interest is not an appropriate test

to evaluate takings claims under the Fifth Amendment to the United States Constitution. *Lingle v. Chevron U.S.A.,* 544 U.S. 528, 532, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

judicial proceedings] as they have by law or usage in the" state courts, 28 U.S.C. § 1738, and "has long been understood to encompass the doctrines of res judicata ... and collateral estoppel." *San Remo*, 545 U.S. at 336, 125 S.Ct. 2491. In *San Remo Hotel*, the petitioners attempted to reserve their federal takings claim for resolution in federal court, just as Hallco attempted to do here. *Id.* at 337–42, 125 S.Ct. 2491. The Court acknowledged that the petitioners could have reserved a federal claim that was distinct from an antecedent state action capable of mooting a federal issue under *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). But the Court emphasized that "[t]he purpose of the *England* reservation is not to grant plaintiffs a second bite at the apple in their forum of choice." *Id.* at 346, 125 S.Ct. 2491. Because the hotel owners had argued in state court that a development-fee ordinance on its face and as applied failed to substantially advance a legitimate governmental purpose and imposed an undue economic burden, they were not entitled to reserve their federal takings claim for adjudication in federal court. *Id.* at 341. The Court acknowledged that the petitioners' federal claims were not ripe until they sought relief under state law. *Id.* at 346, 125 S.Ct. 2491. But, the Court said,

> [a]t base, petitioners claim amounts to little more than the concern that it is unfair to give preclusive effect to state-court proceedings that are not chosen, but are instead *required* in order to ripen federal takings claims. Whatever the merits of that concern may be, we are not free to disregard the full faith

and credit statute solely to preserve the availability of a federal forum.

*Id.* at 347, 125 S.Ct. 2491. While *San Remo* concerned the application of collateral estoppel, rather than res judicata, nothing in the Court's opinion suggests that it would recognize an exception to the full-faith-and-credit statute when state law would apply res judicata or collateral estoppel principles to bar a second claim. To the contrary, the Supreme Court has broadly construed the statute to require "all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Because we hold that Hallco's as-applied challenge is barred, its Fifth Amendment claim is similarly barred and Hallco's reservation is immaterial. Accordingly, the court of appeals did not err in affirming summary judgment on Hallco's federal takings claim.

### V. Conclusion

We affirm the court of appeals' judgment.

Justice HECHT delivered a dissenting opinion, joined by Justice MEDINA and Justice WILLETT.

Justice GREEN did not participate in the decision.

Justice HECHT, joined by Justice MEDINA and Justice WILLETT, dissenting.

A regulatory-takings claim may challenge a land-use restriction on its face or as applied to particular property.[1] A facial

---

1. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) (recognizing "an important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation"); *City of Corpus Christi v. Pub. Util. Comm'n of Texas*, 51 S.W.3d 231, 247

challenge is ripe when the restriction is imposed,[2] but an as-applied claim is not ripe until the regulatory authority has made a final decision regarding the application of the regulation to the property[3] "A 'final decision' usually requires ... the denial of a variance from the controlling regulations" unless a request for variance would be futile.[4]

This case illustrates how the government can use this ripeness requirement to whipsaw a landowner. The government can argue either that there was no request for a variance when there should have been, or that the request was not specific enough, or that it was not reasonable enough, or that there was insufficient time to consider it—and therefore the landowner's regulatory-takings claim is premature, unripe, and should be dismissed. Or else it can argue that a request for a variance would be a waste of time, or that none was authorized, or that the landowner should have known his ridiculous proposal would never be seriously considered—and therefore his claim is late, barred, and should be dismissed. One way or the other, the result is the same. Ripening a regulatory-takings claim thus becomes a costly game

of "Mother, May I", in which the landowner is allowed to take only small steps forwards and backwards until exhausted.

When Hallco Texas, Inc. first sued McMullen County, alleging that an ordinance aimed at stopping Hallco from using its property as a nonhazardous industrial waste landfill effected a compensable taking, the County argued that it "ha[d] the authority to grant a variance, or even to rescind the ordinance, if Hallco present[ed] sufficient justification", and therefore, Hallco's action was not ripe because it "ha[d] not obtained a final decision from the County". This embarrassing fact is buried in a footnote to the Court's opinion[5] and never discussed. After Hallco lost, it submitted a lengthy and detailed request for a variance, which the County summarily denied. Now in this, Hallco's second state-court suit against the County on its regulatory-takings claim (it has also sued three times in federal court), the County argues that the prior action was ripe after all and bars this one because requesting a variance was futile. The Court agrees and holds that Hallco should

(Tex.2001) (describing a takings claim as "an as-applied constitutional challenge, rather than a facial challenge").

**2.** *Yee v. City of Escondido,* 503 U.S. 519, 533–534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ("While respondent is correct that a claim that the ordinance effects a regulatory taking as applied to petitioners' property would be unripe [because petitioners did not seek an exception], petitioners mount a facial challenge to the ordinance.... As this allegation does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated, petitioners' facial challenge is ripe." (citations omitted)); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 930 (Tex.1998) ("[A] final decision on the application of the zoning ordinance to the plaintiff's property is

not required if the plaintiff brings a facial challenge to the ordinance.").

**3.** *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) ("[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."); *Mayhew,* 964 S.W.2d at 929 ("[I]n order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue.").

**4.** *Mayhew,* 964 S.W.2d at 929.

**5.** *Ante* at 54 n. 4.

not have "another bite at the apple",[6] as if being forced to bob for apples is the same as ever getting a bite.

The Court wants Hallco to know that "[w]e are sympathetic".[7] But it adds: "McMullen County unquestionably had the power to regulate land use, especially around a water supply like Choke Canyon Reservoir, *and in the abstract, its doing so would hardly ever give rise to takings liability.*"[8] Poor Hallco. It should have known better than to take the County at its word because it could "hardly ever" win anyway, even if it was successful in obtaining a permit to operate a landfill, even if the County deprived Hallco of the lawful use and economic benefit of its property. After spending millions of dollars over twelve years, Hallco, I rather imagine, would prefer justice to sympathy.

I would take the County at its word and remand the case for proceedings on the merits, if Hallco can endure yet another round of litigation. Accordingly, I respectfully dissent.

## I

In January 1991, Hallco bought 128 acres of raw land in rural McMullen County (1,142 sq. mi., 1990 pop. 817), a little under two miles from Choke Canyon Reservoir, a 26,000–acre lake on the Frio River halfway between San Antonio and Corpus Christi. The lake supplies water to Corpus Christi and others and provides a setting for recreational activities. The only community in the vicinity of Hallco's property is Calliham, some two-and-one-half miles away, which had about 50 residents. Otherwise, the area is mostly pasture.

Hallco bought the property for use as a Class I nonhazardous industrial waste landfill.[9] No local land-use regulations restricted solid waste disposal on the property Hallco acquired. Since 1971, Texas counties have been authorized to prohibit by ordinance the disposal of solid waste in specific areas where it is a threat to public health, safety, and welfare,[10] but McMullen County had never had such an ordinance. All Hallco needed to operate a landfill was a state permit from what was then the Texas Water Commission (later the Texas Natural Resource Conservation Commission, and now the Texas Commission on Environmental Quality, all referred to sim-

---

**6.** *Ante* at 60.

**7.** *Ante* at 60.

**8.** *Ante* at 61 (emphasis added).

**9.** Tex. Health & Safety Code § 361.003(2)-(3)("(2) 'Class I industrial solid waste' means an industrial solid waste or mixture of industrial solid waste, including hazardous industrial waste, that because of its concentration or physical or chemical characteristics: (A) is toxic, corrosive, flammable, a strong sensitizer or irritant, or a generator of sudden pressure by decomposition, heat, or other means; and (B) poses or may pose a substantial present or potential danger to human health or the environment if improperly processed, stored, transported, or otherwise managed. (3) 'Class I nonhazardous industrial solid

waste' means any Class I industrial solid waste that has not been identified or listed as a hazardous waste by the administrator of the United States Environmental Protection Agency under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 (42 U.S.C. Section 6901 et seq.)."); *see also* 40 C.F.R. § 261.4(b) (2006) (listing nonhazardous solid wastes).

**10.** County Solid Waste Disposal Act, 62nd Leg., R.S., ch. 516, § 18, 1971 Tex. Gen. Laws 1757, 1762 (stating in part that a county "may prohibit the disposal of any solid waste within the county if the disposal of the solid waste is a threat to the public health, safety, and welfare") (codified as amended at Tex. Health & Safety Code § 364.012).

ply as "the Commission".[11] Hallco applied for the permit in July 1992.

The County opposed Hallco's plans from the start. Eleven days after Hallco acquired the property, the commissioners court adopted a resolution opposing the proposed landfill, expressing concern that it might contaminate the reservoir, the Frio River, the nearby Nueces River, and groundwater, jeopardize residents, livestock, vegetation, and soil, and stink.[12] The County also intervened in the Commission proceeding along with Corpus Christi and others to oppose Hallco's permit application. But not until June 1993, after the application had been pending nearly a year and Hallco had spent some $800,000 on the proposed landfill and permit process, did the commissioners court adopt an ordinance[13] prohibiting solid

11. *See* TEX. HEALTH & SAFETY CODE § 361.061 (stating that with exceptions not material to the present case, the Texas Commission on Environmental Quality "may require and issue permits authorizing and governing the construction, operation, and maintenance of the solid waste facilities used to store, process, or dispose of solid waste under this chapter"); *id.* § 361.086(a) ("A separate permit is required for each solid waste facility."); 30 TEX. ADMIN. CODE § 335.2 (2006).

12. McMullen County, Texas, Resolution No. 1–16–91 (Jan. 14, 1991):

A *RESOLUTION* to oppose the establishment of an industrial landfill at a site on the Hallco Texas, Inc. property, being that 128.192 acre tract of land, found upon resurvey to contain 128.214 acres of land in the James Garner Survey No. 6, Abstract 5 of McMullen County.

*WHEREAS* the McMullen County Commissioner's Court has reviewed this proposal and agreed unanimously that the establishment of this project would present a potential hazard to the health and well being of the residents of McMullen County and:

*WHEREAS* the project could, in the event of a spill, leak, or accident, contaminate the waters of the Frio and Nueces River and the water supplies of downstream users of water from those rivers:

*WHEREAS* the establishment of this project could in the event of a spill, leak or accident, pollute and contaminate the underground water sands that are the main source of drinking water for the rural residents of McMullen County livestock, and the Federal Correctional Institute, Three Rivers:

*WHEREAS* the project could, in the event of a spill, leak, or accident, contaminate the vegetarian, animal life, and soil adjacent to and on the watershed below the proposed site:

*WHEREAS* this project could create an objectionable odor to neighboring residents of McMullen County.

*NOW THEREFORE BE IT RESOLVED* that the McMullen County Commissioner's Court opposes the establishment of an industrial landfill on the Hallco Texas, Inc. property located in the James garner Survey No. 6, Abstract 5 of McMullen County.

Duly adopted at a meeting of the McMullen County Commissioner's Court this 14th day of January, 1991.

13. McMullen County, Texas, Ordinance No. 01–06–93 (June 14, 1993):

AN ORDINANCE PROHIBITING SOLID WASTE DISPOSAL WITHIN THREE MILES OF CHOKE CANYON LAKE AND PROVIDING CIVIL AND CRIMINAL PENALTIES

Be it ordained, ordered and adopted by the commissioners court of McMullen County, Texas:

SECTION 1. GENERAL PROVISIONS

WHEREAS, the McMullen County Commissioners Court has both the responsibility and the authority to protect the health, safety, and welfare of the citizens of McMullen County, Texas; and

WHEREAS, a safe and abundant supply of drinking water is necessary to preserve and protect the health and welfare of the citizens of McMullen County, Texas; and

WHEREAS, the Choke Canyon Lake provides a portion of the drinking water for McMullen County as well as other counties and municipalities; and

WHEREAS, the soil in the area of the lake is porous and subsurface materials tend to be unstable and volatile;

WHEREAS, the disposal of solid waste within three (3) miles of Choke Canyon Lake would constitute a threat to the public health, safety and welfare; and

waste disposal within three miles of the reservoir.[14] Although the County had no technical or scientific studies to support the restriction, the ordinance recited that

the soil in the area of the lake is porous and subsurface materials tend to be unstable and volatile; ... the disposal of solid waste within three (3) miles of Choke Canyon Lake would constitute a threat to the public health, safety and welfare; and ... the present technology available with regard to the installation, operation and maintenance of solid waste disposal sites is insufficient to prevent contamination of adjacent areas....[15]

Despite this ordinance and opposition by the County and others, the Commission

WHEREAS, the present technology available with regard to the installation, operation and maintenance of solid waste disposal sites is insufficient to prevent contamination of adjacent areas; and

WHEREAS, adequate waste disposal sites are available in portions of the county which are not in close proximity of the lake;

(a) IT IS THEREFORE ORDAINED AND ORDERED that the disposal of solid waste is prohibited within three (3) miles of Choke Canyon Lake.

(b) IT IS FURTHER ORDAINED AND ORDERED that the disposal of solid waste is not prohibited in any other area of the county, provided that any such site complies with all applicable state requirements.

SECTION 2. CIVIL REMEDIES AND PENALTIES

(a) Any violation of this ordinance is subject to a civil penalty of $10,000.00 for each violation. Such penalty to be forfeited to McMullen County, Texas. Each day that a violation continues constitutes a separate ground for recovery.

(b) The commissioners court of McMullen County, Texas, may bring a legal action to enjoin violations of this ordinance and seek judgment for any civil penalties.

SECTION 3. CRIMINAL PENALTY

(a) Disposal of solid waste in violation of this ordinance constitutes a Class C misdemeanor punishable by a fine not to exceed $500.00.

(b) Each day that a violation continues constitutes a separate offense under this ordinance.

SECTION 4. SEVERABILITY

If any portion of this ordinance is deemed to be in violation of the statutes or the constitution of this state or the United States by a court of competent jurisdiction, said portion shall be severed, and the remaining portions of the ordinance shall remain in full force and effect.

SECTION 5. EFFECTIVE DATE

This ordinance shall become effective immediately upon adoption.

Read and adopted this _14th_ day of June, 1993, by a vote of _5_ ayes and _0_ nays.

**14.** In 1999, the Legislature amended section 364.012 of the Health and Safety Code to add subsections (e) and (f) as follows:

(e) The commissioners court of a county may not prohibit the processing or disposal of municipal or industrial solid waste in an area of that county for which:

(1) an application for a permit or other authorization under Chapter 361 has been filed with and is pending before the commission; or

(2) a permit or other authorization under Chapter 361 has been issued by the commission.

(f) The commission may not grant an application for a permit to process or dispose of municipal or industrial solid waste in an area in which the processing or disposal of municipal or industrial solid waste is prohibited by an ordinance, unless the county violated Subsection (e) in passing the ordinance. The commission by rule may specify the procedures for determining whether an application is for the processing or disposal of municipal or industrial solid waste in an area for which that processing or disposal is prohibited by an ordinance.

Act of May 25, 1999, 76th Leg., R.S., ch. 570, § 5, sec. 364.012, 1999 Tex. Gen. Laws 3110, 3111. The amendment does not apply to a permit application filed before September 1, 1998, if on or before September 1, 1999, a county had enacted an ordinance under section 364.012. *Id.* § 6, 1999 Tex. Gen. Laws at 3112. Thus, this amendment does not apply in this case.

**15.** McMullen County, Texas, Ordinance No. 01–06–93 (June 14, 1993).

did not determine that Hallco's operation of a landfill would be harmful to the public and instead issued a 78–page revised final draft permit in February 1995, detailing the specifications for a landfill operation as recommended by the Commission staff.

Two weeks later, Hallco sued the County in the United States District Court for the Southern District of Texas,[16] alleging in part that the County's ordinance was a regulatory-taking requiring compensation under the Fifth Amendment to the United States Constitution.[17] Around the same time, Hallco also filed its regulatory-taking claim in state court, asserting violations of both the Fifth Amendment and article I, section 17 of the Texas Constitution.[18] The County immediately moved to dismiss the federal-court action, asserting that it was not ripe for two reasons: Hallco had not obtained a final decision from the county regarding the application of the ordinance—in effect, a variance—and Hallco had not fully pursued relief in state court. Both were prerequisites to suit in federal court under the United States Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank.*[19] Hallco responded that it should be excused from requesting a variance since the ordinance did not provide for one and any request would be futile. In reply, the County insisted that a vari-

ance was possible and that, in any event, state proceedings had to be exhausted:

[T]he Supreme Court [in *Williamson*] has held that regulatory takings claims, such as the one presented in this case, are not ripe for federal adjudication unless the Plaintiff: 1) obtains a final decision from the regulatory entity (here, the County) regarding the application of the ordinance or regulation ... to his property; and 2) seeks just compensation through available state procedures.

... Hallco does not dispute that it has satisfied neither prong of *Williamson:* it has not obtained a final decision from the County and it has not sought redress through available state procedures. Instead, Plaintiff argues only that it would be futile to approach the county for a final decision on the application of the ordinance to its property.

[Hallco] offers absolutely no authority for the proposition that futility is an excuse to the requirement of finality. Even if there were a futility exception, at least one application for variance would be required to establish futility. Contrary to [Hallco's] assertion, the fact that the ordinance does not contain a provision for reviewing how the ordinance will be applied to particular property does not establish that it is futile;

---

**16.** *Hallco Texas, Inc. v. McMullen County,* 934 F.Supp. 238, 240 (S.D.Tex.1996), *aff'd,* 109 F.3d 768 (5th Cir.1997) (table).

**17.** *Id.* at 240; *see* U.S. CONST. amend. V ("nor shall private property be taken for public use, without just compensation").

**18.** TEX. CONST. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made....").

**19.** 473 U.S. 172, 185–197, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *but see San Remo Hotel, L.P. v. City and County of San Francisco,* 545

U.S. 323, 348, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) (Rehnquist, C.J., concurring) (indicating the Court may need to reconsider *Williamson County's* requirement that a litigant pursue relief in state court first); Scott A. Keller, Note, *Judicial Jurisdiction Stripping Masquerading as Ripeness: Eliminating the Williamson County State Litigation Requirement for Regulatory Takings Claims,* 85 TEX. L.REV. 199 (2006); J. David Breemer, *You Can Check Out But You Can Never Leave: the Story of San Remo Hotel—the Supreme Court Relegates Federal Takings Claims to State Courts under a Rule Intended to Ripen the Claims for Federal Review,* 33 B.C. ENVTL. AFF. L.REV. 247 (2006).

the Commissioners Court has the authority to grant a variance, or even to rescind the ordinance, if Hallco presents sufficient justification. Therefore, [Hallco's] argument has no merit.

Moreover, [Hallco] wholly fails to address the consequences of its failure to seek redress through available state court procedures. The *Williamson* case itself makes it abundantly clear that state remedies must be sought in state court prior to bringing a federal takings claim.

Without deciding whether Hallco had satisfied *Williamson County's* first requirement, the district court dismissed the case in August 1995 for failure to satisfy the second:

It is arguable whether Hallco meets the first condition. Apparently, it has neither submitted a plan to the County nor sought a variance or waiver from the Commissioners Court. Hallco argues that the ordinance constitutes a final decision because, unlike the regulation in *Williamson County*, this ordinance does not expressly provide any means for obtaining variances from its provisions.... The Court will not dwell on this argument since Hallco has not met the second ripeness condition.

"[B]efore a takings claim is ripe, the claimant must unsuccessfully seek compensation. Short of that, it must be certain that the state *would* deny that claimant compensation were he to undertake the obviously futile act of seeking it." *Samaad v. City of Dallas,* 940 F.2d [925, 934 (5th Cir.1991)] (emphasis in original). Under Article I, § 17 of the Texas Constitution, property owners claiming an uncompensated taking may seek compensation through an inverse condemnation suit. *See Westgate Ltd. v.*

*State,* 843 S.W.2d 448, 452 (Tex.1992). Hallco makes no claim to have sought just compensation; therefore, its takings claim is premature.[20]

The parties then turned to the state-court action, referred to as *Hallco I.* Though Hallco still had not requested a variance from the County, the state court, like the federal court, did not determine whether such a request was a prerequisite to Hallco's action. Instead, the trial court in May 1996 granted summary judgment for the County in part on the ground that prohibiting Hallco's proposed landfill operation did not constitute a taking of its property requiring compensation under the state and federal constitutions. In April 1997, the court of appeals affirmed, reasoning as follows:

We find that Hallco's takings claim must fail because he did not have a cognizable property interest of which the government action could deprive him.

Hallco's takings claim is grounded in the idea that it has a constitutionally protected property interest or entitlement to use its property for waste disposal, and that the McMullen County ordinance deprived him of that right or entitlement. However, Hallco has never had the right to dispose of industrial waste on its property, and does not now have a right to dispose of such waste....

In Texas, the Legislature has defined when property owners may dispose of solid waste on their property via the permitting process; TEX. HEALTH & SAFETY CODE ANN. § 361.061–.345 (Vernon 1992 & Supp.1997). Even if Hallco already had a permit, by definition it would not have a property interest in disposal of solid waste. TNRCC regula-

---

20. *Hallco,* 934 F.Supp. at 240.

tions define permits as not being a property interest or a vested right in the permittee. *See* 30 TEX. ADMIN. CODE § 305.122(b) (West 1996).

The only way the McMullen County regulation affected Hallco was in denying it the right to operate a solid waste facility on the proposed site. A mere expectancy of future services which would render the land more valuable, in the absence of a contract, is not a vested property right for purposes of determining whether a taking has occurred. *Estate of Scott v. Victoria County*, 778 S.W.2d 585, 592 (Tex.App.-Corpus Christi 1989, no writ). The McMullen County ordinance does not otherwise impact on use of the property. Because Hallco did not have a property interest in disposal of solid waste on its property, we hold that the ordinance in question did not constitute a taking as a matter of law.[21]

The court of appeals did not discuss whether the case was ripe given that Hallco had not requested a variance. Hallco did not appeal further.

The Commission never approved Hallco's permit, but its application remained pending.[22] In August 1999, about two years after the judgment in *Hallco I* was final on appeal, Hallco requested a variance from the ordinance. The lengthy request included the revised final draft permit issued by the Commission and a valuation of the property, both of which were obtained after the County enacted its ordinance. The valuation showed that the property was worth $5.2 million if operated as a landfill but only $58,300 otherwise, and that a landfill business operated on the property would be worth $15,870,000. The County heard Hallco's presentation of its request but took no further action.

In December 1999, Hallco filed this action, referred to as *Hallco II*, against the County, again asserting a regulatory taking of its property. Besides its constitutional claims, Hallco also sued under the Texas Private Real Property Rights Preservation Act.[23] Concerned that the state action might not prevent the running of limitations on a federal action, Hallco also filed the same action in federal court.[24]

**21.** *Hallco Texas, Inc. v. McMullen County*, No. 04–96–00681–CV, 1997 Tex.App. LEXIS 2020, at *6–9, 1997 WL 184719, at *3 (Tex. App.-San Antonio April 16, 1997, no writ) (not designated for publication) (*"Hallco I "*).

**22.** In 2003, the Legislature required the Commission to "adopt rules governing all aspects of the management and operation of a new commercial landfill facility that proposes to accept nonhazardous industrial solid waste for which a permit has not been issued" and to "suspend the permitting process for any pending application for [such] a permit ... until the rules adopted ... take effect." Act of May 27, 2003, 78th Leg., R.S., ch. 1117, §§ 1–2, 2003 Tex. Gen. Laws 3207, 3207–3208. The Commission complied on March 19, 2004. 29 Tex. Reg. 2888 (2004); *see also* 30 TEX. ADMIN. CODE §§ 335.580–.594.

**23.** TEX. GOV'T CODE § 2007.001–.045.

**24.** At the time, case authority indicated that a party suing in state court to satisfy the *Williamson* exhaustion requirement could reserve federal claims for later litigation in federal court so that the state-court judgment would not bar the federal action. *See Guetersloh v. State*, 930 S.W.2d 284, 289–290 (Tex. App.-Austin 1996, writ denied), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998) (citing *England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411, 415–416, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Jennings v. Caddo Parish Sch. Bd.*, 531 F.2d 1331, 1332 (5th Cir.1976); and *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1305–1306 (11th Cir.1992)). Since then, however, the United States Supreme Court has held that such a reservation does not avoid the preclusive effect of the state-court judgment. *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 338, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) (*"England* does not

The federal court rejected Hallco's concerns and dismissed the action.[25] The County moved for summary judgment in the state proceeding, arguing that Hallco had not suffered a compensable taking of its property. The County did not argue that it lacked authority to grant a variance or reconsider Hallco's proposal; the County argued only that Hallco had not made a case for a variance or reconsideration. The County also argued that this action is barred by *Hallco I* and by limitations and laches. The trial court granted summary judgment for the County without specifying the grounds.

The court of appeals "reaffirm[ed]" its holding in *Hallco I* that "because Hallco did not have a property interest in the disposal of solid waste on its property, the ordinance did not constitute a taking as a matter of law."[26] The court added that without a state permit for a landfill, "Hallco did not have a distinct investment-backed expectation that it could use the property for solid waste disposal, and use of the property for solid waste disposal was neither an existing nor a permitted use."[27] The court did not mention Hallco's statutory claim.

## II

The ripeness requirement for regulatory-takings claims stems from the root of such claims, first stated by Justice Holmes:

> while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.... [T]his is a question of degree—and therefore cannot be disposed of by general propositions.... [T]he question at bottom is upon whom the loss of the changes desired should fall.[28]

"It follows from the nature of a regulatory takings claim," the United States Supreme Court has since observed, "that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes."[29]

Thus, as we noted above, the Supreme Court held in *Williamson County* that "a claim that the application of government regulations effects a taking of a property interest [under the Fifth Amendment] is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."[30] More recently, the Supreme Court has explained:

support [the] erroneous expectation that [a] reservation would fully negate the preclusive effect of the state-court judgment with respect to any and all federal issues that might arise in the future federal litigation.").

**25.** *Hallco Texas, Inc. v. McMullen County,* No. L–00–14 (S.D. Tex. April 24, 2000) (order dismissing action without prejudice for want of jurisdiction).

**26.** *Hallco II,* 94 S.W.3d 735, 738–739.

**27.** *Id.* at 738.

**28.** *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415–416, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *accord Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 670 (Tex. 2004) (footnotes omitted).

**29.** *MacDonald, Sommer & Frates v. County of Yolo,* 477 U.S. 340, 348, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); *accord Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 929 (Tex. 1998).

**30.** *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *accord Mayhew,* 964 S.W.2d at 929 ("[I]n order for a regulatory takings claim to be ripe, there must be a final decision regarding the appli-

*Williamson County's* final decision requirement "responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer." *Suitum v. Tahoe Regional Planning Agency,* 520 U.S. 725, 738[, 117 S.Ct. 1659, 137 L.Ed.2d 980] (1997). While a landowner must give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened.

\* \* \* \*

[A] landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation. Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established. See *Suitum, supra,* at 736, and n. 10[, 117 S.Ct. 1659] (noting difficulty of demonstrating that "mere enact-

ment" of regulations restricting land use effects a taking). Government authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision . . . . [31]

This Court has said that "[a] 'final decision' usually requires . . . the denial of a variance from the controlling regulations" unless a request for variance would be futile.[32] Futility was the reason Hallco gave the federal court in its first action for not having requested a variance from the ordinance. The ordinance was crystal clear, Hallco argued, and applied specifically to its property, and there were no procedures for granting a variance. The County responded:

> Contrary to [Hallco's] assertion, the fact that the ordinance does not contain a provision for reviewing how the ordinance will be applied to particular property does not establish that it is futile; the Commissioners Court has the authority to grant a variance, or even to rescind the ordinance, if Hallco presents sufficient justification. Therefore, [Hallco's] argument has no merit.

The County now insists that Hallco's request for a variance should not have the effect of reviving its claim.

But ripening is not reviving. In a regulatory-takings case, the dispute must be sufficiently focused for the court to determine exactly how far a general land-use restriction extends in specific circumstances. General restrictions almost always have exceptions. The final-decision requirement allows regulators full discretion in adjusting restrictions to particular

cation of the regulations to the property at issue.").

**31.** *Palazzolo v. Rhode Island,* 533 U.S. 606, 620–621, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001).

**32.** *Mayhew,* 964 S.W.2d at 929.

property before a constitutional obligation to compensate a landowner can be triggered. The County enacted its ordinance out of a concern, expressly stated, that "*present* technology available with regard to the installation, operation and maintenance of solid waste disposal sites is insufficient to prevent contamination of adjacent areas" (emphasis added). That was 20 months before the Commission issued Hallco a 78–page revised final draft permit with detailed specifications for the safe operation of the proposed landfill, and six years before Hallco requested a variance. It was certainly not unreasonable to expect that the County might be willing to reconsider the appropriateness of a three-mile zone if a landfill were required to be operated as set out in Hallco's revised final draft permit, or as a result of changes in technology, or simply after taking another look at the situation. At least the County has always professed in court its willingness to do so, until now, and here we should take it at its word.

Hallco claims in this case that the County's ordinance effects a taking *as applied,* not of *any and all* property proposed to be used as a landfill within three miles of Choke Canyon Lake, but only of property on which the prohibited operation is one that is subject to specifications like those in Hallco's revised final draft permit. Just as a zoning authority might adjust generally applicable front-or side-yard requirements, or height or size restrictions, or other regulations affecting construction on property, depending on particular circumstances, a county's determination of whether a landfill can be operated in an area may depend on the details of the operation.

Despite the County's assurances in federal court that it could and would consider Hallco's request for a variance, or for that matter, to repeal the ordinance altogether, it now protests that no procedure is prescribed for any such request to be made. Perhaps the County did not previously consider the absence of such procedure an inhibition to a request for a variance because it knew that general procedures permitted the request. As we have said,

> the term "variance" is "not definitive or talismanic;" it encompasses "other types of permits or actions [that] are available and could provide similar relief." The variance requirement is therefore applied flexibly in order to serve its purpose of giving the governmental unit an opportunity to "grant different forms of relief or make policy decisions which might abate the alleged taking." [33]

In fact, the County received the request and allowed Hallco to present it to the commissioners court. In this way, the details of Hallco's proposed operation as specified in the revised final draft permit and an evaluation of the economic impact of the ordinance on Hallco were presented to the commissioners court for its consideration. The County cites nothing that affirmatively prohibited it from amending its ordinance in response to the request. Instead, it insists that Hallco provided no justification for reconsideration.

The County suggests, apparently in the alternative, that Hallco should have requested a variance sooner, but the County cites no deadline for such a request and no authority for the argument that Hallco should have acted more diligently. A landowner's decision to request a variance may involve many considerations, personal, economic, technical, and political. Timing may be critical. A landowner who wishes to make a facial challenge to a regulation, as Hallco did, should not be forced to request a variance before he believes he is in the best position to do so, or risk losing

---

**33.** *Id.* at 930 (citations omitted).

the facial challenge to limitations or the as-applied challenge to res judicata.

The County argues that allowing a regulatory-takings claim after every denial of a variance gives a landowner multiple bites at the apple, threatening repetitious and harassing litigation. But a landowner who is denied a variance, sues, loses, requests another variance, is denied again, and sues again, can expect the same result if the facts have not changed. If the apple is wormy, it is not clear why someone would take multiple bites. The expense of litigation and the possibility of sanctions for groundless lawsuits are ample deterrents. And if the facts have changed, so that the regulation as finally applied effects a taking, there is no reason to deny the landowner the compensation promised by the constitution.

The County adopted its ordinance without a scientific or technical basis for a zone of three miles as opposed to a shorter distance, and without a specific proposal for a landfill operation. In such circumstances it is especially important that there be an ample opportunity to consider a proposed land-use in detail before making a final decision that may result in a compensable taking. The Court says that the facts regarding Hallco's proposed landfill operation have not changed since *Hallco I*. Perhaps not, but Hallco did not request the variance the County said it would consider until after *Hallco I* was concluded.

"Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in a prior suit."[34] Because the as-applied claim Hallco makes in the present case was not ripe while *Hallco I* was pending, it was not, and could not have been, adjudicated in that case, and thus it is not barred by res judicata.

The County also argues that this action is barred by collateral estoppel. Collateral estoppel bars a claim only if "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."[35] The only fact specifically determined in *Hallco I* was that Hallco had no inherent right to operate a landfill. This fact is, of course, undisputed, and as I explain below, is not determinative of whether a compensable taking occurred. None of the issues on which Hallco's claim depends—the economic impact of the ordinance on Hallco, the reasonableness of Hallco's investment-backed expectations, and whether the ordinance singled Hallco out instead of promoting a public interest—was "fully and fairly litigated" in *Hallco I*. Even if the parties raised these issued in *Hallco I*, they were not "essential to the judgment", which was based solely on the only issue specifically determined—that Hallco had *no inherent right* to operate a landfill. Moreover, the Court has held that courts should not strictly apply the elements of collateral estoppel when the purposes of the doctrine are disserved thereby.[36] Those purposes are disserved when the doctrine is used by the County to escape its representations to a federal judge.

**34.** *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992).

**35.** *John G. and Marie Stella Kenedy Mem. Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994).

**36.** *Sysco Food Servs.*, 890 S.W.2d at 801–804 (holding that collateral estoppel would not be applied, even though all three factors were present, because application would not serve the doctrine's intended purposes—it would not conserve judicial resources, prevent multiple lawsuits, or avoid the possibility of in-

The County further argues that this action is barred by limitations and laches. But the County does not argue that a regulatory-takings claim accrues for limitations purposes before it is ripe, and there is authority that it does not.[37] It is not entirely clear what statute of limitations applies to such claims[38] but none is as short as three months, the time Hallco waited to file suit after the County refused to grant a variance. Thus, the claim is not barred by limitations. "Generally in the absence of some element of estoppel or such extraordinary circumstances as would render inequitable the enforcement of petitioners' right after a delay, laches will not bar a suit short of the period set forth in the limitation statute."[39] No such circumstances are present in this case.

## III

The County contends that it has established that its ordinance did not effect a compensable taking of Hallco's property. In *Sheffield Development Co. v. City of Glenn Heights*, we explained how a land-use regulation should be analyzed to determine whether it has effected a compensable taking:

> [W]hether regulation has gone "too far" and become too much like a physical taking for which the constitution requires compensation requires a careful analysis of how the regulation affects the balance between the public's interest and that of private landowners. While each case must therefore turn on its facts, guiding considerations can be identified, as the Supreme Court first explained in *Penn Central Transportation Co. v. City of New York:*
>
> > In engaging in these essentially ad hoc, factual inquiries, the Court's decisions have identified several factors that have particular significance. The economic impact of the regulation on

37. *Biddison v. City of Chicago*, 921 F.2d 724, 728–729 (7th Cir.1991) ("several regulatory taking cases hold that a taking accrues at the same time that it ripens") (citing *Norco Constr. v. King County*, 801 F.2d 1143, 1146 (9th Cir.1986); *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir.1990); and *McMillan v. Goleta Water Dist.*, 792 F.2d 1453, 1457 (9th Cir.1986)).

38. *Compare Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 358 n. 4 (Tex.App.-Texarkana 2002, pet. denied) ("There is no specific statute of limitations for an inverse condemnation claim. However, courts have held the ten-year statute of limitations to acquire land by adverse possession applies. *Trail Enters.,*

consistent findings—and fairness concerns were especially important in light of the procedural uniqueness of the case) (citing *Blonder–Tongue Labs., Inc. v. University of Illinois Found.*, 402 U.S. 313, 328, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (stating that preclusion doctrines have the "goal of limiting relitigation of issues where that can be achieved without compromising fairness in particular cases")).

*Inc. v. City of Houston*, 957 S.W.2d 625, 631 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 16.026(a) (Vernon Supp.2002); *Brazos River Auth. v. City of Graham*, 163 Tex. 167, 354 S.W.2d 99, 110 (1961); *Waddy v. City of Houston*, 834 S.W.2d 97, 102 (Tex.App.-Houston [1st Dist.] 1992, writ denied); *Hudson v. Arkansas Louisiana Gas Co.*, 626 S.W.2d 561, 563 (Tex.App.-Texarkana 1981, writ ref'd n.r.e.); *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 823 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.)."), *with* TEX. CIV. & REM.CODE § 16.003(a) ("a person must bring suit for trespass for injury to the estate or to the property of another ... not later than two years after the day the cause of action accrues").

39. *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 840 (Tex.1968) (citing *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 158 Tex. 594, 314 S.W.2d 782 (1958), and *Culver v. Pickens*, 142 Tex. 87, 176 S.W.2d 167 (1944)).

the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. So, too, is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

The Supreme Court has restated these factors simply as:

> (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action."

Nevertheless, the Supreme Court has cautioned that these factors do not comprise a formulaic test. *"Penn Central* does not supply mathematically precise variables, but instead provides important guideposts that lead to the ultimate determination whether just compensation is required." "The temptation to adopt what amount to *per se* rules in either direction must be resisted."

Thus, for example, the economic impact of a regulation may indicate a taking even if the landowner has not been deprived of all economically beneficial use of his property. Nor are the three *Penn Central* factors the only ones relevant in determining whether the burden of regulation ought "in all fairness and

justice" to be borne by the public. Whether a regulatory taking has occurred, the Supreme Court has said, "depend[s] on a complex of factors *including*" the three set out in *Penn Central.* The analysis "necessarily requires a weighing of private and public interests" and a "careful examination and weighing of all the relevant circumstances in this context." As we have ourselves said of regulatory-takings issues, "we consider all of the surrounding circumstances" in applying "a fact-sensitive test of reasonableness".

We have said that while determining whether a property regulation is unconstitutional requires the consideration of a number of factual issues, the ultimate question of whether a zoning ordinance constitutes a compensable taking or violates due process or equal protection is a question of law, not a question of fact. In resolving this legal issue, we consider all of the surrounding circumstances. While we depend on the district court to resolve disputed facts regarding the extent of the governmental intrusion on the property, the ultimate determination of whether the facts are sufficient to constitute a taking is a question of law.[40]

The court of appeals did not engage in this analysis. In *Hallco I,* it held simply that the County's ordinance did not effect a taking of Hallco's property because no landowner has "a property interest in disposal of solid waste on its property".[41] The court simply "reaffirm[ed]" this holding in *Hallco II.* But no landowner has an unrestricted right to *any* use of property. Businesses can be zoned out of residential neighborhoods.[42] Home construction can

**40.** *Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 671–673 (Tex.2004) (footnotes omitted).

**41.** *Hallco I,* 1997 Tex.App. LEXIS 2020, at \*8, 1997 WL 184719, at \*3.

**42.** See, e.g., *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 390, 397, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (upholding zoning regulations creating "residential districts, from which business and trade of every sort, including hotels and apartment houses, are ex-

be limited in size, height, and placement on the property.[43] Nuisances can be prohibited.[44] Every landowner's right to use his property may be restricted by the government in the legitimate exercise of its police power and by the common law. These restrictions do not mean that landowners have no property interest in the use of their land, and stating that a particular use is subject to permit requirements says nothing about whether an ordinance prohibiting a use *with* the requisite permit constitutes a compensable taking. A taking occurs when the government interferes too far in a landowner's use of property, regardless of the nature of the intended use.

Nor is it determinative that Hallco had not yet obtained a permit for its proposed landfill. The government cannot deny a landowner all reasonable use of his property and refuse to compensate him for the taking simply because his proposed use of his property requires a permit he has not yet obtained. If the government could avoid its constitutional obligation by denying permits, there would be little left to the guarantee of compensation.

A requirement that a permit be obtained before property can be used in a particular way does not preclude a landowner from having a reasonable, investment-backed expectation that he will succeed in obtaining the permit and pursue the intended use, contrary to the court of appeals' con-

clusion in *Hallco II*. To be sure, the uses to which a piece of property has been put historically are important in assessing the reasonableness of a purchaser's expectations,[45] but an expectation of a particular use of property is not unreasonable merely because it is new or subject to a permit requirement. Hallco appears to have anticipated correctly that obtaining a landfill permit was reasonably likely, since the Commission went so far as to issue a revised final draft permit. But the final permit never issued, and the reasons are not clear from the record before us. The record does not establish that Hallco's expectations of operating a landfill were reasonable, but neither does it establish that they were unreasonable.

Even if the record were clearer on this point, and the reasonableness of Hallco's investment-backed expectations could be better assessed, the issue of whether the County's ordinance constituted a compensable taking could not be determined without an assessment of other relevant factors. Again, whether a land-use regulation is an unreasonable restriction amounting to a compensable taking requires a careful analysis of all relevant factors and circumstances. A formulaic approach cannot be used.

One factor that must be considered is the economic impact of the ordinance on the landowner. Hallco offered evidence that its property was worth $5.2 million as

cluded"); *Lombardo v. City of Dallas,* 124 Tex. 1, 73 S.W.2d 475, 478 (1934) ("The right to establish zoning districts is well established throughout the United States, and has been approved by the courts of many jurisdictions.").

**43.** *See, e.g., City of Dallas v. Vanesko,* 189 S.W.3d 769 (Tex.2006).

**44.** *See, e.g., Northwestern Laundry v. City of Des Moines,* 239 U.S. 486, 491–492, 36 S.Ct. 206, 60 L.Ed. 396 (1916) ("So far as the

Federal Constitution is concerned, we have no doubt the State may by itself or through authorized municipalities declare the emission of dense smoke in cities or populous neighborhoods a nuisance and subject to restraint as such. . . .").

**45.** *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 937 (Tex.1998) ("Historical uses of the property are critically important when determining the reasonable investment-backed expectation of the landowner.").

a landfill but only $58,300 with the ordinance in place, and that its proposed landfill business would be worth nearly $16 million. However, Hallco never obtained a final permit to operate a landfill, so it is unclear what the ultimate economic impact of the ordinance actually was. Also, the price of acquisition and the worth of the property put to other uses must be considered. And whatever the economic impact of the ordinance on Hallco, taking into account all pertinent information, economic impact is but one factor to be considered in determining whether there was a compensable taking.

Another factor, and one especially troubling in this case, is whether the County singled out Hallco without substantially advancing legitimate public interests. Although the United States Supreme Court has made clear that this not "a stand-alone regulatory takings test that is wholly independent of *Penn Central* or any other test",[46] this Court concluded in *Sheffield* that it may be a consideration in an appropriate case.[47] The County insists that it adopted the ordinance to protect the health and safety of its residents, but the record contains little solid evidence to support that assertion. The County's resolution in January 1991 recited problems that *could* result from a landfill operation, but the County does not claim to have had any evidence that they actually *would*. Rather, the County simply opposed Hallco's proposed use of its property. The operation of a landfill undeniably poses risks to surrounding areas, hence the requirement of a state permit. But the question is

whether the County's ordinance was directed at the risks or at Hallco. The Commission's issuance of a revised final draft permit to Hallco over the objection of the County and others after two-and-one-half years of proceedings certainly suggests that the County's professed concerns lacked firm footing. The county judge conceded that when the ordinance was adopted in July 1993, the County had no scientific or technical information to support the three-mile restriction. The County has yet to point to evidence that a landfill three miles from Choke Canyon Lake was safe when one two miles or one mile from the lake was not. At this point, the conclusion is certainly reasonable that the County's decision was dictated, not by any evaluation of health or safety concerns, but by the fortuity that Hallco acquired property where it did.

The timing of the ordinance also suggests that it may have been directed at injuring Hallco rather than protecting the County. The County argues with some force that it had no reason to enact an ordinance prohibiting landfills near Choke Canyon Lake before Hallco purchased property and made its proposal in January 1991. That was the first time the issue had arisen. But the County offers no explanation for delaying adoption of an ordinance until July 1993. By that time, according to Hallco's evidence, it had spent two years and over $800,000 on Commission proceedings and the proposed landfill, and was on the verge of obtaining a final draft permit. Had the County enacted an ordinance when it first learned of Hallco's

---

**46.** *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 540, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

**47.** *Sheffield*, 140 S.W.3d 660, 674 (Tex.2004) ("Furthermore, apart from what the Supreme Court has said, we continue to believe for purposes of state constitutional law, as we held in [*Mayhew*, 964 S.W.2d at 933–934],

that the statement in *Agins [v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)] is correct: that whether regulation substantially advances legitimate state interests is an appropriate test for a constitutionally compensable taking, at least in some situations.").

plans, Hallco might have deferred its application until it had tested the validity of the ordinance. Even if it had gone ahead, it would have done so knowing the obstacles it faced. A reasonable inference from the record before us is that the County delayed enactment of the ordinance merely to disadvantage Hallco in its proceedings before the Commission.

In *Sheffield,* the evidence was "quite strong" that the city had attempted to take unfair advantage of a developer by imposing a moratorium on development in specific response to the developer's plans, extending the moratorium long after any purpose had been served, and delaying action on the developer's plans until it could muster the votes for rezoning.[48] Although we found the city's conduct "troubling", we concluded that the delay may only have been lethargic, and that in the end the city had completed a comprehensive rezoning that arguably benefitted the entire community.[49] In the present case, by contrast, the evidence is stronger that the County's delay was ill-motivated, and there is almost no evidence whether the ordinance benefitted the County's residents or not.

Again, however, the character of the ordinance and the manner in which it was adopted are but factors to be considered in determining whether there was a compensable taking of Hallco's property. Whether a regulatory taking has occurred is, as we have said, a question of law, but it must be answered after the relevant facts have been determined. Considering the evidence of the reasonableness of Hallco's investment-backed expectations, the economic impact of the ordinance, and the singling out of Hallco without a legitimate public purpose, I would hold that the

County failed to establish its entitlement to judgment as a matter of law. Because Hallco's claim under the Texas Private Real Property Rights Preservation Act is based on its constitutional claims, the County was not entitled to summary judgment on the statutory claim.[50] It, too, should be remanded to the trial court for further proceedings.

\* \* \*

Hallco is entitled to a decision on the merits of its claims that the County's ordinance effected a compensable taking of its property. Because the Court disagrees, I respectfully dissent.

---

**48.** *Sheffield,* 140 S.W.3d at 678–679.

**49.** *Id.* at 679.

**50.** Tex. Gov't Code § 2007.001–.045.