Opinion issued January 29, 2009 

 










            









In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-08-00242-CV
 

 
 
THE CITY OF HOUSTON, Appellant
 
V.
 
JOHN O’FIEL and MARY JANE O’FIEL, Appellees
 

 
 
On Appeal from County Civil Court of Law Number One 
Harris County, Texas
Trial Court Cause No. 901201
 

 

MEMORANDUM OPINION
          
          Appellant, the City of Houston (“the City”), appeals the trial court’s denial of
its plea to the jurisdiction. The City argues that the trial court should have granted its
plea to the jurisdiction because the suit filed against it by appellees, John and Mary
Jane O’Fiel (“the O’Fiels”), is not ripe for adjudication. We affirm. Background
          John and Mary Jane O’Fiel own property near White Oak Bayou, within the
City of Houston. The property consists of 45,750 square feet of land and one 628-
square-foot house. According to the O’Fiels, prior to 2006, the City’s Code of City
Ordinances (“the Code”), restricted development within the floodway of the City but
allowed the city engineer to issue permits notwithstanding those restrictions. In 2006,
the City amended the Code to further restrict development within the floodway.



          Section 19-43(a)(2) prohibits the issuance of a permit for “development to be
located in any floodway, . . . if that development provides for [n]ew construction,
additions to existing structures, or substantial improvement of any structure within
the floodway.” Section 19-43(d) allows the city engineer to issue a permit, even if
a permit application is denied under section 19-43(a)(2), so long as the general
appeals board determines in writing that the improvement is insubstantial and will not
increase flood levels during occurrence of the base flood nor impede the flow of
floodwaters.
          The O’Fiels filed suit against the City in 2007, alleging that, after the Federal
Emergency Management Agency approved new Flood Insurance Rate Maps in June
2007, their property was within a newly delineated floodway. The O’Fiels allege that,
in light of that new designation, the City’s 2006 amendments to Section 19-43(c) of
the Code prohibit the issuance of building permits for “new construction, additions
to existing structures or substantial improvement of any structure” on their property.
In addition, the O’Fiels contend that the amended Code prohibited the City Engineer
from issuing any building permits for such construction, stating that the Code “simply
denies [the O’Fiels] the ability to secure a building permit without a right to be heard
by any administrative body or agency.” The O’Fiels allege that the City’s ordinance
“unlawfully deprived [them] of use, benefit and enjoyment of the Property and has
drastically reduced its value because [they] can neither construct any improvement
in or upon the Property nor sell the Property to anyone who desires to construct any
improvements in or upon the Property.” Finally, the O’Fiels allege that “no
administrative procedures have been established by [the City] for the issuance of
building permits on properties situated in the Floodways within the geographical
boundaries of the City of Houston.”
          The City’s answer alleges that the O’Fiels had failed to exhaust the
administrative remedies allowed by the Code. The City also provided an affidavit
from the City Engineer attesting that the O’Fiels had not applied for a development
permit for their property, that no such permit had been yet denied to them, and that
no appeal had been taken from such a denial. The City filed a plea to the jurisdiction 
contending that the City Engineer has exclusive authority to approve or disapprove
an application for a permit for proposed development in a floodway, and that the
Code also allows for an appeal to the General Appeals Board if the City Engineer
denied a development permit for an improvement that the Board determined was
“insubstantial.” The City argues that, because the O’Fiels had not filed an application
for a permit, nor had they yet appealed such a denial as allowed by the Code, their
claims were not ripe and the trial court lacked jurisdiction to consider their petition. 
The City again attached the affidavit of the City Engineer, stating that the O’Fiels had
not sought, nor had they been denied or appealed, a development permit for their
property. 
          The O’Fiels responded that, under the plain language of the Code, their
intended use for the property—residential construction—was expressly forbidden and
the Code allowed no discretion or variances. After hearing, the trial court denied the
City’s plea to the jurisdiction, and this interlocutory appeal followed. 
Standard of Review
          We review the trial court’s ruling on a plea to the jurisdiction under a de novo
standard. Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex.
2004). If the plea challenges the sufficiency of the claimant’s pleadings, the trial
court must construe the pleadings liberally in the claimant’s favor and deny the plea
if the claimant has alleged facts affirmatively demonstrating jurisdiction to hear the
case. If the pleadings are insufficient, the court should afford an opportunity to
replead if the defects are potentially curable but may dismiss if the pleadings
affirmatively negate the existence of jurisdiction. Id. at 226–27.
          If the plea to the jurisdiction challenges the existence of jurisdictional facts, the
trial court must consider relevant evidence submitted by the parties. Id. at 227. If the
evidence creates a fact question regarding jurisdiction, then the trial court cannot
grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder. 
But if the relevant evidence is undisputed or fails to raise a fact question on the
jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of
law. Id. at 227–28. In reviewing the evidence presented in support of the plea to the
jurisdiction, we take as true all evidence favorable to the nonmovant. Id. at 228. We
indulge every reasonable inference and resolve any doubts in the nonmovant’s favor. 
Id. “[T]his standard generally mirrors that of a summary judgment under Texas Rule
of Civil Procedure 166a(c). . . . By requiring the [political subdivision] to meet the
summary judgment standard of proof in cases like this one, we protect the plaintiffs
from having to put on their case simply to establish jurisdiction.” Id. (internal
quotations and citation omitted); accord Dallas County v. Wadley, 168 S.W.3d 373,
377 (Tex. App.—Dallas 2005, pet. denied) (“[On a plea to the jurisdiction,] the
burden is on the government to meet the summary judgment standard of proof.”).
          We remain mindful of the Texas Supreme Court’s admonishment that, although
the plaintiff’s claims may form the context against which the jurisdictional plea is
determined, the plea generally “should be decided without delving into the merits of
the case.” Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). In
general, “the proper function of a dilatory plea does not authorize an inquiry so far
into the substance of the claims presented that plaintiffs are required to put on their
case simply to establish jurisdiction.” Id. at 554.
Analysis
          The Texas Constitution provides that no “person’s property shall be taken,
damaged or destroyed for or applied to public use without adequate compensation
being made.” Tex. Const. art. I, § 17; Sheffield Dev. Co., Inc. v. City of Glenn
Heights, 140 S.W.3d 660, 669 (Tex. 2004). Similarly, the Just Compensation Clause
of the Fifth Amendment provides that “private property [shall not] be taken for public
use without just compensation.” U.S. Const. amend. V. The Just Compensation
Clause applies to the states by operation of the Fourteenth Amendment. Mayhew v.
Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998).
          Inverse condemnation occurs when property is taken for public use without
proper condemnation proceedings and the property owner attempts to recover
compensation for that taking. City of Dallas v. Blanton, 200 S.W.3d 266, 271 (Tex.
App.—Dallas 2006, no pet.). To state a cause of action for inverse condemnation, a
plaintiff must allege: (1) an intentional governmental act; (2) that resulted in his
property being taken, damaged, or destroyed; (3) for public use. Id. Although the
Texas Constitution’s adequate compensation provision is worded differently than the
just compensation clause of the Fifth Amendment to the United States Constitution,
the Texas Supreme Court has described them as comparable and generally looks to
federal cases for guidance in takings cases. See Hallco Tex., Inc. v. McMullen
County, 221 S.W.3d 50, 56 (Tex. 2006); Sheffield, 140 S.W.3d at 669.
          Is the O’Fiels’ claim ripe?      
           A regulatory-takings claim may challenge a land-use restriction on its face or
as applied to particular property. Keystone Bituminous Coal Ass’n v. DeBenedictis,
480 U.S. 470, 494, 107 S. Ct. 1232, 1247 (1987) (recognizing “an important
distinction between a claim that the mere enactment of a statute constitutes a taking
and a claim that the particular impact of government action on a specific piece of
property requires the payment of just compensation”); City of Corpus Christi v. Pub.
Util. Comm’n, 51 S.W.3d 231, 247 (Tex. 2001). A facial challenge is ripe when the
restriction is imposed, but an as-applied claim is not ripe until the regulatory authority
has made a final decision regarding the application of the regulation to the property. 
Compare Yee v. City of Escondido, 503 U.S. 519, 533–534, 112 S. Ct. 1522, 1531–
32 (1992) with Williamson County Reg’l Planning Comm’n v. Hamilton Bank, 473
U.S. 172, 186, 105 S. Ct. 3108, 3116 (1985). Because the O’Fiels do not allege that
the sections of the Code at issue do not “substantially advance a legitimate state
interest” no matter how they are applied, we construe the O’Fiels’ claim as
complaining that the Code, as applied to their property, amount to an unconstitutional
regulatory taking of their property. Yee, 503 at 533-534, 112 S. Ct. at 1531–32. 
           Ripeness is an element of subject matter jurisdiction and, as such, is subject
to de novo review. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928–29 (Tex.
1998). We look to the experience of the federal courts in determining the ripeness of
constitutional challenges to land-use regulations. Id. 
          “[W]hile property may be regulated to a certain extent, if regulation goes too
far it will be recognized as a taking.” Pa. Coal Co. v. Mahon, 260 U.S. 393, 415, 43
S. Ct. 158, 160 (1922). In an as-applied takings claim, “[a] court cannot determine
whether a regulation has gone ‘too far’ unless it knows how far the regulation goes.” 
Mayhew, at 929. To that end, a “final decision” in this context usually requires both
a rejected development plan and the denial of a variance from the controlling
regulation. Id.; see also Williamson County Reg’l Planning Comm’n, 473 U.S. at
186–88, 105 S. Ct. 3108, 3116 (holding takings claim not ripe where the property
owner never sought variances from the zoning ordinance). 
          The term “variance” is “not definitive or talismanic”; it encompasses “other
types of permits or actions [that] are available and could provide similar relief.” 
Mayhew, 964 S.W.2d at 930. The variance requirement is therefore applied flexibly
in order to serve its purpose of giving the governmental unit an opportunity to “grant
different forms of relief or make policy decisions which might abate the alleged
taking.” Id. However, futile variance requests or re-applications are not required. 
Id. at 929. For instance, property owners are not required to seek permits for
developments that the “property owner does not deem economically viable.” Id. at
932; see also Palazzolo v. Rhode Island, 533 U.S. 606, 622, 121 S. Ct. 2448, 2460
(2001) (“Ripeness doctrine does not require a landowner to submit applications for
their own sake.”). “While a landowner must give a land-use authority an opportunity
to exercise its discretion, once it becomes clear that the agency lacks the discretion
to permit any development, or the permissible uses of the property are known to a
reasonable degree of certainty, a takings claim is likely to have ripened.” Palazzolo,
533 U.S. at 620, 121 S. Ct. at 2459. Where an ordinance “prohibit[s] precisely the
use” the property owner “intended to make of th[e] property, and nothing in the
ordinance suggest[s] any exceptions would be made,” the owner’s “taking claim [i]s
ripe upon enactment” of the ordinance “because at that moment the ‘permissible uses
of the property [are] known to a reasonable degree of certainty.’” Hallco Tex., Inc.,
221 S.W.3d at 60(quoting Palazzolo, 533 U.S. at 620, 121 S. Ct. at 2459). We review
the ripeness evidence before the trial court in the light most favorable to the O’Fiels.
Miranda, 133 S.W.3d at 227–28. 
          The City argues that, because the O’Fiels have not applied for a permit to
develop their property, their claim for inverse condemnation cannot be ripe and the
trial court should have granted the City’s plea to the jurisdiction. The City relies
upon the Texas Supreme Court’s decision in Mayhew to argue that there must be a
“final decision” before the O’Fiels’ claim can be ripe. Without such an application,
and a denial of that application, the City argues it cannot be known for certain
whether the O’Fiels’ property has been taken or impaired in any way. The City
essentially argues that, despite the seemingly mandatory language of the ordinance,
the City or some agent thereof might grant the O’Fiels a variance or development
permit for their property to allow construction. 
          The City’s reliance on Mayhew misplaced. In Mayhew, the Mayhews sought
permission for a development with a density exceeding the one-unit-per acre zoning
requirement, and they told the town officials that a planned development would not
be feasible under the one-unit-per-acre zoning. Id. at 925–26. After the Mayhews
engaged in a series of discussions with officials lasting over a year, and submitted
several studies and evaluative reports, the planned development request was denied. 
Id. The Mayhews subsequently filed suit alleging, among other things, that the
town’s refusal to approve the planned development was a taking of their property. 
Id. The town argued that the Mayhews’ claims were not ripe because they submitted
only one planned development application and did not thereafter reapply for
development or submit a variance. Id. at 931. The Supreme Court found that, under
the unique facts of the case, the Mayhews’ efforts to gain permission for the
development were sufficient to make their claim ripe, and any further applications
would have been futile. Id. Unlike Mayhew, this case does not present the issue of
whether the O’Fiels’ efforts thus far to gain a variance or permit are sufficient, but
whether the Code’s plain language removes the need for any such efforts. 
          The O’Fiels point out that the plain language of section 19-43(a)(2) forbids
exactly the type of development they wish to pursue on their property—“[n]ew
construction, additions to existing structures, or substantial improvement of any
structure within the floodway,” and permits the city engineer to issue permits only for
those permits which are initially denied but are later determined to be “insubstantial.” 
 In addition, the O’Fiels point to section 19-20 of the Code which, while generally
allowing applications for variances from the Code’s requirements on the grounds of
a “substantial hardship,” specifically forbids variances for development within any
floodway “if the development cannot meet the requirements of section 19-43(b) of
this Code.” Thus, the O’Fiels contend, applying for a permit or a variance would
have been an exercise in futility and a waste of resources. 
          In light of the plain language of the ordinance, and specifically section 19-20's
specific language prohibiting variances for the type of development sought by the
O’Fiels, we believe the outcome in this case is controlled by the United States
Supreme Court’s decision in Suitum v. Tahoe Regional Planning Agency, 520 U.S.
725, 117 S. Ct. 1659 (1997) and the Supreme Court of Texas’ opinion in Hallco Tex.,
Inc., 221 S.W.3d 50 (Tex. 2006). 
          In Suitum, a landowner filed suit claiming an unconstitutional regulatory taking
of her land after the regional planning agency adopted a plan restricting development
on parcels of land carrying runoff into area watersheds, a designation which included
her land. The agency rules at issue did not permit any “additional land coverage or
other permanent land disturbances” on such land. 520 U.S. at 730, 117 S. Ct. at 1663.
 Further, the rules did not provide for variances or exceptions, although they did
provide for certain credits that landowners of land ineligible for construction could
sell to owners of eligible parcels. Id. The agency argued that Suitum’s claim could
not be ripe, in part because she had not yet applied for a permit to develop her land. 
The Supreme Court disagreed, finding that, in light of the agency’s complete lack of
discretion under its rules to actually allow Suitum to build on her land, “no occasion
exists for applying [the] requirement that a landowner take steps to obtain a final
decision about the use that will be permitted on a particular parcel.” Id. at 739, 117
S. Ct. at 1667. 
          In Hallco, the plaintiff purchased land in McMullen County near the Choke
County Reservoir, which supplies water to Corpus Christi and surrounding areas.
Hallco intended to operate an industrial waste landfill on the site. 221 S.W.3d at 60. 
After Hallco purchased the land, the McMullen County Commissioners Court passed
an ordinance prohibiting the disposal of solid waste within three miles of the
Reservoir, an area that included Hallco’s property. Id. at 52–53. The ordinance did
not establish any procedures for obtaining a variance. Id. at 53. Hallco filed suit
against the County alleging that the ordinance amounted to an unconstitutional
regulatory taking of its property. Id. In addressing when Hallco’s takings claim had
ripened, the Court noted that, “unlike Williamson County, this is not a case in which
a general zoning or land-use restriction was subject to discretionary application.” Id.
at 60. Instead, “the ordinance here prohibited precisely the use that Hallco intended
to make of this property, and nothing in the ordinance suggested any exceptions
would be made.” Id. Accordingly, the Court concluded that “Hallco’s claim was
ripe upon enactment because at that moment the permissible uses of the property were
known to a reasonable degree of certainty.” Id. (citing Palazzolo, 533 U.S. at 620,
121 S. Ct. at 2459). 
          Like the plaintiff in Suitum, the O’Fiels allege that the Code does not provide
the City or any other agency discretion in allowing the O’Fiels to develop or build
upon their property as they desire. Similarly, as in Hallco, the Code prohibits
precisely the use the O’Fiels claim that they intend to make of their property, and
nothing in the ordinance suggests any exceptions or variances would be granted to
them for this use. The City did not present any evidence to raise a question of fact
as to these assertions. Accordingly, we overrule the City’s issue and find that, based
upon the pleadings and the evidence that the record reflects were before the trial court
at the time of the hearing, the issue of whether the Code constitutes an
unconstitutional regulatory taking of the O’Fiels’ property was ripe for adjudication.
                    
Conclusion
          We affirm the trial court’s denial of the City’s plea to the jurisdiction.
 
                                                             

                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Jennings, Hanks, and Bland.