Opinion issued May 21, 2009

 













In The

Court of Appeals

For The

First District of Texas






NOS. 01-08-01030-CV






THE CITY OF HOUSTON, Appellant


V.


HAROLD DEAN NOONAN, II, Appellee






On Appeal from the County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 902193






MEMORANDUM OPINION


 Harold Dean Noonan, II filed suit against the City of Houston ("the City")
claiming that a 2006 amendment to the City's Code of Ordinances regulating
developments in floodways was an unconstitutional taking of his property, a portion
of which is located in the floodway. The City filed a plea to the jurisdiction asserting
that Noonan's claim was not ripe, and that, therefore, the trial court had no
jurisdiction to hear the case. The trial court denied the City's plea to the jurisdiction,
and this interlocutory appeal followed. We affirm.

BACKGROUND

 In April 1998, Noonan purchased two lots totaling 25,352 square feet of land
on the shore of Lake Houston. After Tropical Storm Allison, the Federal Emergency
Management Agency ("FEMA") undertook a study of the impact of the storm on
some of the bayous and drainage channels in the City of Houston. As a result of this
study, maps known as Flood Insurance Rate Maps ("FIRMs") were created. Before
these maps were created, Noonan's property was not in a floodway. The FIRMs,
however, for the first time, placed Noonan's property in a floodway. 

 In 2006, the Houston City Counsel voted to enact a comprehensive amendment
to Chapter 19 of the City's Code of Ordinances, known as the "Flood Plain
Ordinance."

 Section 19-43(a) provided as follows:

 No permit shall hereafter be issued for a development to be located in
any floodway . . . if that development provides for . . . [n]ew
construction, additions to existing structures, or substantial improvement
of any structure within the floodway[.]


Houston, Tex., Code of Ordinances §19-43(a)(2) (Ord. No. 2006-894) (2006)
(since amended).

 The ordinance also provided that the city engineer may issue permits "[f]or
those facilities necessary to protect the health, safety and welfare of the general
public" or "for the construction of a bridge or the repair or replacement of an existing
bridge in a floodway[.]" Houston, Tex., Code of Ordinances §19-43(b), (c) (Ord.
No. 2006-894) (2006) (since amended). Noonan intended to build a residence on his
property, so neither of these exceptions allowing for development in floodways would
apply to him.

 Finally, section 19-20 of the ordinance provided in relevant part that
"[v]ariances shall not be granted for development within any floodway if the
development cannot meet the requirements of 19-43(b) of this Code." Houston,
Tex., Code of Ordinances § 19-20 (Ord. No. 2006-894) (2006) (since amended). 
As stated above, § 19-43 (b) permitted building in a floodway only if "necessary to
protect the health, safety and welfare of the general public." 

 Noonan filed suit against the City alleging that after the FEMA approved new
FIRMs in June 2007, his property was within a newly delineated floodway. Noonan
alleges that, in light of that new designation, the City's 2006 amendments to Section
19-43(a) of the Code prohibited the issuance of building permits for "new
construction, additions to existing structures or substantial improvement of any
structure" on his property. It is undisputed that Noonan intended to build a private
residence on his property. 
 The City, however, contends that Noonan's lawsuit is not ripe. Although
Noonan filed an application for a building permit, which was denied, he never filed
an appeal or sought a variance, and, in fact, withdrew his application. Thus, the City
filed a plea to the jurisdiction contending that, because Noonan had not appealed or
sought a variance for his permit, his claims were not ripe, and the trial court lacked
jurisdiction to consider his petition.

 Noonan responded that, under the plain language of the Code, his intended use
for the property--residential construction--was expressly forbidden and the Code
allowed no discretion or variances under such circumstances. After a hearing, the
trial court denied the City's plea to the jurisdiction, and this interlocutory appeal
followed.

STANDARD OF REVIEW

 We review the trial court's ruling on a plea to the jurisdiction under a de novo
standard. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex.
2004). If the plea challenges the sufficiency of the claimant's pleadings, the trial
court must construe the pleadings liberally in the claimant's favor and deny the plea
if the claimant has alleged facts affirmatively demonstrating jurisdiction to hear the
case. If the pleadings are insufficient, the court should afford an opportunity to
replead if the defects are potentially curable but may dismiss if the pleadings
affirmatively negate the existence of jurisdiction. Id. at 226-27.

 If the plea to the jurisdiction challenges the existence of jurisdictional facts, the
trial court must consider relevant evidence submitted by the parties. Id. at 227. If the
evidence creates a fact question regarding jurisdiction, then the trial court cannot
grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder. 
But if the relevant evidence is undisputed or fails to raise a fact question on the
jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of
law. Id. at 227-28. In reviewing the evidence presented in support of the plea to the
jurisdiction, we take as true all evidence favorable to the nonmovant. Id. at 228. We
indulge every reasonable inference and resolve any doubts in the nonmovant's favor.
Id. "[T]his standard generally mirrors that of a summary judgment under Texas Rule
of Civil Procedure 166a(c). . . . By requiring the [political subdivision] to meet the
summary judgment standard of proof in cases like this one, we protect the plaintiffs
from having to put on their case simply to establish jurisdiction." Id. (internal
quotations and citation omitted); accord Dallas County v. Wadley, 168 S.W.3d 373,
377 (Tex. App.--Dallas 2005, pet. denied) ("[On a plea to the jurisdiction,] the
burden is on the government to meet the summary judgment standard of proof.").

 We remain mindful of the Texas Supreme Court's admonishment that, although
the plaintiff's claims may form the context against which the jurisdictional plea is
determined, the plea generally "should be decided without delving into the merits of
the case." Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). In
general, "the proper function of a dilatory plea does not authorize an inquiry so far
into the substance of the claims presented that plaintiffs are required to put on their
case simply to establish jurisdiction." Id.

RIPENESS

 A regulatory-takings claim may challenge a land-use restriction on its face or
as applied to particular property. Keystone Bituminous Coal Ass'n v. DeBenedictis,
480 U.S. 470, 494, 107 S. Ct. 1232, 1247 (1987) (recognizing "an important
distinction between a claim that the mere enactment of a statute constitutes a taking
and a claim that the particular impact of government action on a specific piece of
property requires the payment of just compensation"); City of Corpus Christi v. Pub.
Util. Comm'n, 51 S.W.3d 231, 247 (Tex. 2001). A facial challenge is ripe when the
restriction is imposed, but an as-applied claim is not ripe until the regulatory authority
has made a final decision regarding the application of the regulation to the property.
Compare Yee v. City of Escondido, 503 U.S. 519, 533-34, 112 S. Ct. 1522, 1531-32
(1992) with Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S.
172, 186, 105 S. Ct. 3108, 3116 (1985). Because Noonan does not allege that the
sections of the Code of Ordinances at issue do not "substantially advance a legitimate
state interest" no matter how they are applied, we construe Noonan's claim as one
complaining that the Code, as applied to his property, amounts to an unconstitutional
regulatory taking. See Yee, 503 U.S. at 533-34, 112 S. Ct. at 1531-32.

 Ripeness is an element of subject-matter jurisdiction and, as such, is subject to
de novo review. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928-29 (Tex.
1998). We look to the experience of the federal courts in determining the ripeness of
constitutional challenges to land-use regulations. Id.

 "[W]hile property may be regulated to a certain extent, if regulation goes too
far it will be recognized as a taking." Pa. Coal Co. v. Mahon, 260 U.S. 393, 415, 43
S. Ct. 158, 160 (1922). In an as-applied takings claim, "[a] court cannot determine
whether a regulation has gone 'too far' unless it knows how far the regulation goes."
Mayhew, at 929. To that end, a "final decision" in this context usually requires both
a rejected development plan and the denial of a variance from the controlling
regulation. Id.; see also Williamson County Reg'l Planning Comm'n, 473 U.S. at
186-88, 105 S. Ct. at 3116 (holding takings claim not ripe when property owner
never sought variances from zoning ordinance).

 The term "variance" is "not definitive or talismanic"; it encompasses "other
types of permits or actions [that] are available and could provide similar relief."
Mayhew, 964 S.W.2d at 930. The variance requirement is therefore applied flexibly
in order to serve its purpose of giving the governmental unit an opportunity to "grant
different forms of relief or make policy decisions which might abate the alleged
taking." Id. 

 However, futile variance requests or re-applications are not required. Id. at
929. For instance, property owners are not required to seek permits for developments
that the "property owner does not deem economically viable." Id. at 932; see also
Palazzolo v. Rhode Island, 533 U.S. 606, 622, 121 S. Ct. 2448, 2460 (2001)
("Ripeness doctrine does not require a landowner to submit applications for their own
sake."). "While a landowner must give a land-use authority an opportunity to
exercise its discretion, once it becomes clear that the agency lacks the discretion to
permit any development, or the permissible uses of the property are known to a
reasonable degree of certainty, a takings claim is likely to have ripened." Palazzolo,
533 U.S. at 620, 121 S. Ct. at 2459. When an ordinance "prohibit[s] precisely the
use" the property owner "intended to make of th[e] property, and nothing in the
ordinance suggest[s] any exceptions would be made," the owner's "taking claim [i]s
ripe upon enactment" of the ordinance "because at that moment the 'permissible uses
of the property [are] known to a reasonable degree of certainty.'" Hallco Tex., Inc.,
221 S.W.3d at 60 (quoting Palazzolo, 533 U.S. at 620, 121 S. Ct. at 2459). We
review the ripeness evidence before the trial court in the light most favorable to
Noonan. Miranda, 133 S.W.3d at 227-28.

 The City argues that, because Noonan has withdrawn his application for a
permit to develop his property and never requested a variance, his claim for inverse
condemnation cannot be ripe and the trial court should have granted the City's plea
to the jurisdiction. The City relies upon the Texas Supreme Court's decision in
Mayhew to argue that there must be a "final decision" before Noonan's claim can be
ripe. Without such an application, and a denial of that application, the City argues it
cannot be known for certain whether the Noonan's property has been taken or
impaired in any way. The City essentially argues that, despite the seemingly
mandatory language of the ordinance, the City or some agent thereof might grant
Noonan a variance or development permit for his property to allow construction.

 The City's reliance on Mayhew is misplaced. In Mayhew, the Mayhews sought
permission for a development with a density exceeding the one-unit-per acre zoning
requirement, and they told the town officials that a planned development would not
be feasible under the one-unit-per-acre zoning. Mayhew, 964 S.W.2d at 925-26. 
After the Mayhews engaged in a series of discussions with officials lasting over a
year and submitted several studies and evaluative reports, the planned development
request was denied. Id. The Mayhews subsequently filed suit alleging, among other
things, that the town's refusal to approve the planned development was a taking of
their property. Id. The town argued that the Mayhews' claims were not ripe because
they submitted only one planned development application and did not thereafter
reapply for development or submit a variance. Id. at 931. The Supreme Court found
that, under the unique facts of the case, the Mayhews' efforts to gain permission for
the development were sufficient to make their claim ripe, and any further applications
would have been futile. Id. Unlike Mayhew, this case does not present the issue of
whether Noonan's efforts to gain a variance or permit are sufficient, but whether the
Code's plain language removes the need for any such efforts.

 Noonan points out that the plain language of section 19-43(a)(2) forbids
exactly the type of development he wishes to pursue on his property--"[n]ew
construction, additions to existing structures, or substantial improvement of any
structure within the floodway[.]" In addition, Noonan points to section 19-20 of the
Code which, while generally allowing applications for variances from the Code's
requirements on the grounds of a "substantial hardship," specifically forbids
variances for development within any floodway "if the development cannot meet the
requirements of section 19-43(b) of this Code," which permits a variance only to
"protect the health, safety and welfare of the general public[.]" See Tex., Code of
Ordinances § 19-20. Thus, Noonan contends that applying for a permit or a
variance, or filing an appeal from the denial of a permit, would be an exercise in
futility and a waste of resources. We agree.

 In light of the plain language of the ordinance, specifically section 19-20's
prohibition of variances for the type of development sought by Noonan, we believe
the outcome in this case is controlled by the United States Supreme Court's decision
in Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 117 S. Ct. 1659 (1997)
and the Supreme Court of Texas's opinion in Hallco Tex., Inc., 221 S.W.3d 50. In Suitum, a landowner filed suit claiming an unconstitutional regulatory taking
of her land after the regional planning agency adopted a plan restricting development
on parcels of land carrying runoff into area watersheds, a designation that included
her land. The agency rules at issue did not permit any "additional land coverage or
other permanent land disturbances" on such land. 520 U.S. at 730, 117 S. Ct. at 1663. 
Further, the rules did not provide for variances or exceptions, although they did
provide for certain credits that landowners of land ineligible for construction could
sell to owners of eligible parcels. Id. The agency argued that Suitum's claim could
not be ripe, in part because she had not yet applied for a permit to develop her land. 
The Supreme Court disagreed, finding that, in light of the agency's complete lack of
discretion under its rules to actually allow Suitum to build on her land, "no occasion
exists for applying [the] requirement that a landowner take steps to obtain a final
decision about the use that will be permitted on a particular parcel." Id. at 739, 117
S. Ct. at 1667.

 In Hallco, the plaintiff purchased land in McMullen County near the Choke
County Reservoir, which supplies water to Corpus Christi and surrounding areas. 
Hallco intended to operate an industrial waste landfill on the site. 221 S.W.3d at 60. 
After Hallco purchased the land, an ordinance was passed prohibiting the disposal of
solid waste within three miles of the Reservoir, an area that included Hallco's
property. Id. at 52-53. The ordinance did not establish any procedures for obtaining
a variance. Id. at 53. Hallco filed suit alleging that the ordinance amounted to an
unconstitutional regulatory taking of its property. Id. In addressing when Hallco's
takings claim had ripened, the Court noted that "this is not a case in which a general
zoning or land-use restriction was subject to discretionary application." Id. at 60. 
Instead, "the ordinance here prohibited precisely the use that Hallco intended to make
of this property, and nothing in the ordinance suggested any exceptions would be
made." Id. Accordingly, the Court concluded that "Hallco's claim was ripe upon
enactment because at that moment the permissible uses of the property were known
to a reasonable degree of certainty." Id. (citing Palazzolo, 533 U.S. at 620, 121 S. Ct.
at 2459).

 Like the plaintiff in Suitum, Noonan alleges that the Code does not provide the
City or any other agency discretion in allowing Noonan to develop or build upon his
property as he desires. Similarly, as in Hallco, the Code prohibits precisely the use
Noonan intends to make of his property, and nothing in the ordinance suggests any
exceptions or variances would be granted to him for this use. Thus, like the plaintiffs
in Suitum and Hallco, we conclude that Noonan's claim under the 2006 ordinance
was ripe, despite the fact that Noonan withdrew his application and never applied for
a variance. Such an application or request for variance would have been futile.

 Nevertheless, the City argues that, because the 2006 ordinance was amended
in 2008, "and because [Noonan] never ripened his claim under the 2006 Amendment
to the Ordinance, it is not forever impossible for [Noonan] to ripen his would-be
claim under the 2006 amendment." However, we have held that Noonan's claim
under the 2006 amendment was ripe when Noonan's suit was filed. Thus, the 2008
amendment is irrelevant.

CONCLUSION

 Accordingly, we overrule the City's issue and hold that Noonan's claim that
the 2006 ordinance constitutes an unconstitutional regulatory taking of his property
was ripe for adjudication. We affirm the trial court's denial of the City's plea to the
jurisdiction.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Taft and Sharp.