# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00441-CV

**Key Science & Technology Associates, Inc., d/b/a Key Associates, Appellant**

**v.**

**Texas Commission on Environmental Quality, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. GN401125, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a contested-case hearing, the Texas Commission on Environmental Quality ("the Commission")[1] ordered appellant, Key Science & Technology Associates, Inc. ("Key"), to return approximately $685,000 in overpayments for environmental remediation services. Key sought judicial review. The Travis County District Court affirmed the Commission's order. On appeal to this Court, Key argues that the Commission did not follow its own rules in determining the "actual cost" of the corrective work, misapplied agency law concepts, and erroneously concluded that unpaid subcontractor invoices were not reimbursable as "actual costs" of the cleanup. We will affirm the district court's judgment.

---

[1] The Texas Commission on Environmental Quality was known as the Texas Natural Resource Conservation Commission when this case arose and the Texas Water Commission before that. *See Hallco Texas, Inc. v. McMullen County*, 221 S.W.3d 50, 64-65 (Tex. 2006). To avoid confusion, we refer to the agency as "the Commission."

## FACTUAL AND PROCEDURAL BACKGROUND

In the 1980s, the Commission began requiring owners and operators of leaky petroleum storage tanks to perform remediation work. The Commission instituted a reimbursement program to help cover the costs. *See* 30 Tex. Admin. Code ("Code") §§ 334.301-.322 (2004).[2] The program allowed direct reimbursement to contractors who performed remediation work on behalf of owners and operators. *See id*. § 334.302(j) (contractor may receive reimbursement on behalf of owner or operator if designated as agent or assignee).

Between 1997 and 2001, Key obtained direct reimbursement for 285 storage tank remediation projects on which it served as prime contractor. In each instance, Key obtained reimbursement by submitting to the Commission (1) an assignment of reimbursement rights to Key, executed by the relevant owner or operator; (2) a promissory note to Key, executed by the same owner or operator; and (3) an affidavit executed by Key stating that the owner or operator had fully paid it for its services via the promissory note. *See id*., *id*. § 334.306(b)(7)(E).

In 2001, a Commission audit revealed that Key had not actually incurred approximately $685,000 in costs for which it had nevertheless been reimbursed. *See id*. §§ 334.530-.538 (authorizing and providing rules for audits of entities receiving reimbursement). Part of this amount consisted of subcontractor payments that Key reported to the Commission but never made, and part of it consisted of subcontractor payments that Key made but got back in marketing and origination fees. The Commission demanded repayment. *See id*. § 334.534. Key

---

[2] Throughout this opinion we cite the 2004 regulations that were in effect when this dispute arose. *See Frank v. Liberty Ins. Corp.*, 255 S.W.3d 314, 318 n.3 (Tex. App.—Austin 2008, pet. denied).

demanded a hearing. *See id*. §§ 334.535-.536. The administrative law judge who presided over the hearing found for the Commission, and the Commission subsequently issued a final order requiring repayment. Key filed a suit for judicial review in Travis County District Court. *See* Tex. Gov't Code Ann. § 2001.171 (West 2008). The district court affirmed the Commission's order, and Key perfected this appeal.

## STANDARD OF REVIEW

We review de novo a district court's determination that an agency order was supported by substantial evidence. *See Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 511 (Tex. App.—Austin 2007, no pet.). We review the underlying agency order to determine whether it is supported by substantial evidence. *Id*. at 510. We presume that it is, and the appellant has the burden of proving otherwise. *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. of the Texas Dep't of Transp.*, 179 S.W.3d 589, 602 (Tex. App.—Austin 2005, pet. denied). An agency decision is supported by substantial evidence if "'some reasonable basis exists in the record for the agency's action.'" *Id*. (quoting *Graff Chevrolet Co., Inc. v. Texas Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex. App.—Austin 2001, pet. denied)). An agency decision can meet this standard even if the record evidence preponderates against it, so long as the agency did not act arbitrarily or without regard to the facts. *Id*.

## DISCUSSION

Key makes three arguments in support of sixteen points of error. We will address the arguments in turn.

3

*Argument 1: The Commission Failed to Follow Its Rules Regarding Proof of Payment*

A petroleum tank owner or operator may obtain reimbursement equal to its "actual cost" of remediation. Code § 334.309(c). Applications for reimbursement of such costs must include "proof that the amounts shown on the invoices for which reimbursement is requested have been paid in full by the claimant." *Id*. § 334.306(b)(7). This proof may consist of

> a promissory note issued by the eligible owner or operator to the person who performed the corrective action for the claimed amount accompanied by a notarized affidavit signed by the person who performed the corrective action, affirming that the amounts which the applicant represents as being paid to person who performed the corrective action, were paid in full, via the promissory note.

*Id*. § 334.306(b)(7)(E). Key included promissory notes and affidavits in all of the reimbursement applications it submitted to the Commission on behalf of owners and operators. As a result, Key argues, it "proved" the owners' and operators' "actual costs" conclusively, and the Code did not permit an investigation into whether Key actually incurred the costs that it passed on to the owners and operators.

We disagree. Code section 334.532(b) states: "By making payment of claims to eligible persons . . . , the [Commission's] executive director makes no statement or admission that the payments are for necessary, reimbursable, or allowable costs." Section 334.532(a) states: "Payment by the agency of a claim for money from the Petroleum Storage Tank Remediation Fund means that the claim is subject to post-payment audit." These rules clearly indicate that even though promissory notes and affidavits may serve as prima facie "proof" of entitlement to reimbursement, the Commission intended to permit investigation (and adjustment, if necessary) of all

4

reimbursements paid out of the Remediation Fund. Moreover, under Key's interpretation of section 334.306(b)(7), contractors would have an absolute right to reimbursement for whatever they chose to charge their clients, regardless of their services' objective value.

An inspection of the promissory notes at issue reveals that they could not have proven the owners' and operators' "actual costs." While each note indicated the "principal amount" that Key had charged the owner or operator, each also stated that payment of this amount would come "solely" from reimbursement funds issued by the Commission. That is, if the Commission reimbursed Key for less than the amount of the note, Key had no recourse against the owner or operator to collect the remainder. Thus, each note indicated neither how much money Key actually expended nor how much it was actually "owed" by the owner or operator. In short, the "principal amount" listed on each promissory note was virtually meaningless, and the promissory notes did not actually show that Key had been "paid in full." The Commission correctly interpreted the Code to allow further inquiry.

We reject Key's interpretation of Code section 334.306(b)(7) because it nullifies other Code sections, leads to absurd results, and contradicts the Commission's reasonable interpretation of the Code. *See* Tex. Gov't Code Ann. § 311.021 (presumption that entire statute is intended to be effective); *Buddy Gregg Motor Homes*, 179 S.W.3d at 608 ("A statute should not be construed in a way that leads to absurd conclusions when there is a more reasonable interpretation."); *id*. at 602 ("When an administrative agency is charged with a statute's enforcement and also construes the statute, the agency's construction of the statute is entitled to serious consideration as long as the

5

construction is reasonable and does not contradict the plain meaning of the statute."). Key's first argument is overruled.

*Argument 2: The Commission Misapplied Agency Law Concepts*

The Commission concluded that Key acted as an agent for owners and operators in purchasing subcontractor services. It also concluded that Key used a company called Reimbursement Capital, L.L.C. ("RCAP") as its subagent for purchasing these services. Key contends that these conclusions are not supported by substantial evidence in the record.

We disagree. First, all the promissory notes at issue state that Key advanced remediation costs "on behalf of" owners and operators. Second, Key admits that it acted as owners' and operators' agent in requesting and receiving reimbursement from the Commission. These facts constituted a reasonable basis for the Commission to conclude that Key acted as an agent when it purchased subcontractor services. *See Buddy Gregg Motor Homes*, 179 S.W.3d at 602 (agency decision is supported by substantial evidence if some reasonable basis exists in record for agency's action).

Key counters that because the promissory notes did not make owners and operators personally liable for all of Key's expenses, but rather only entitled Key to whatever reimbursements the Commission might issue, the signatories must not have intended to create an agency relationship. This argument assumes that principals must be personally liable for all financial obligations incurred on their behalf by agents. That is not the law. *See MortgageAmerica Corp. v. American Nat'l Bank of Austin*, 651 S.W.2d 851, 857 (Tex. App.—Austin 1983, writ ref'd n.r.e.) ("'*In the absence of terms to the contrary in the agreement of employment*, the principal has a duty to indemnify

6

the agent . . .'") (emphasis added) (quoting Restatement (Second) of Agency § 438(2)(b) (1958)); *see also* Restatement (Third) of Agency § 8.14(b) (2006) ("A contract between a principal and an agent may . . . specify when and to what extent the principal has a duty to indemnify the agent . . . ."). Thus, promissory notes that guarantee third-party reimbursement but not personal indemnification are consistent with the existence of an agency relationship. Indeed, such promissory notes were to be expected here: they allowed Key to be fully compensated[3] for servicing owners and operators who needed to remediate but could not afford personal liability.

Substantial evidence also supports the Commission's conclusion that RCAP acted as Key's subagent. The Commission found, and Key does not dispute, that the "lines of separation" between Key and RCAP "were quite porous." Dr. Morris Key founded, controlled, and made decisions for both companies. Among other acts indicating that RCAP was Key's subagent, RCAP paid subcontractor invoices with money it borrowed from Key. Key asserts that this evidence does not substantially support the Commission's subagency conclusion, but it offers no argument or evidence to support this assertion. Such a conclusory assertion would be unpersuasive even if we did not presume that the Commission's conclusion was correct. *See Sweed v. City of El Paso*, 194 S.W.3d 684, 686 (Tex. App.—El Paso 2006, no pet.) (brief, conclusory statements, unsupported by legal citations, are insufficient to sustain appellant's complaint); *Buddy Gregg Motor Homes*, 179 S.W.3d at 602 (appellate courts presume that agency's action was supported by substantial evidence). Key's second argument is overruled.

---

[3] Each promissory note explicitly states that it constitutes "full payment" for Key's services, and Key does not claim that the notes ever left it with a shortfall.

7

***Argument 3: Key Was Entitled to Reimbursement Even If It Did Not Pay Its Subcontractors***

Finally, Key argues that paying its subcontractors was not a prerequisite to reimbursement. Key once again cites Code section 334.306(b)(7), which states that an application for reimbursement must contain "proof that the amounts shown on the invoices for which reimbursement is requested have been paid in full by the claimant." Key argues that because "claimant" refers to an owner or operator, the only prerequisite to reimbursement is that the owner or operator has fully paid the invoice submitted to it by its prime contractor. Key argues that it does not matter whether the prime contractor has paid its subcontractors' invoices before submitting its own invoice to the owner or operator. Thus, Key argues, the owners and operators it worked for (and Key by extension) were entitled to reimbursement regardless of whether Key paid its subcontractors' invoices.

Key makes this argument because it had not fully paid many of its subcontractors' invoices at the time it received reimbursement from the Commission. In some instances Key simply withheld payment, while in others Key received "marketing" and "origination" fee offsets that reduced its out-of-pocket costs by up to fourteen percent. Key nevertheless sought reimbursement for the full amounts of its subcontractors' invoices.

Key's third argument is a variation on its first, and the argument fails for the same reasons. As already discussed, Key's interpretation of Code section 334.306(b)(7) nullifies the Code's audit provisions and would permit limitless "reimbursement" for unincurred expenses. We decline to adopt such an interpretation. *See* Tex. Gov't Code Ann. § 311.021 (must presume entire statute is intended to be effective); *Buddy Gregg Motor Homes*, 179 S.W.3d at 608 ("A statute

8

should not be construed in a way that leads to absurd conclusions when there is a more reasonable interpretation.").  As the Commission noted in its conclusions of law, any subcontractor invoice that was not paid in full could not be considered a reimbursable "actual cost."  Key's third argument is overruled.

## CONCLUSION

The Commission's final order was supported by substantial evidence in the record, and the district court properly affirmed it.  We affirm the district court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   July 8, 2009